MARYLAND CASUALTY CO., APPELLANT, *v.* GOUGH; AMERICAN SURETY CO. OF NEW YORK, APPELLEE.

(No. 2878—Decided January 25, 1943.)

*Messrs. Henderson, Ranz & Henderson,* for appellant.

*Messrs. Garfield, Daoust, Baldwin & Vrooman* and *Mr. Francis J. Amer,* for appellee, American Surety Company of New York.

SHERICK, J. Plaintiff appeals on a question of law from an order sustaining the demurrer of the defendant, the American Surety Company, to its amended petition, and upon which judgment was rendered, inasmuch as plaintiff did not choose to further plead. A like demurrer of the defendant, Gough, was overruled. The query before this court, therefore, is: Does the amended petition state a cause of action against American Surety Company? The substance of the pleading is substantially as follows:

On July 16, 1930, James A. Devine (then executive secretary of Ohio Building Association League) was appointed receiver of The Central Savings & Loan Company of Youngstown. He, as principal, and the plaintiff, Maryland Casualty Company, as surety, gave a receiver's bond in the sum of $100,000. On the same day under a proper court order, the receiver appointed the defendant, Gough, as his local representative to administer the affairs of the loan company. Gough, as principal, with American Surety Company as surety, gave a bond in the sum of $10,000. It ran to the receiver. It covered any loss which the receiver might sustain and be responsible for, including that for which the receiver would be responsible if loss occurred by any act of dishonesty, embezzlement or wrongful abstraction on the part of Gough or his failure to faithfully perform his duties.

It is averred that shortly thereafter, the court approved of the designation of the Union National Bank of Youngstown as the depository for the moneys of the receivership, which were to be withdrawable only for the purposes of the receivership, by checks signed by both the receiver and Gough; and that thereupon the receiver furnished a great number of checks bearing his facsimile signature. Gough was placed in custody thereof and was authorized to fill in the payee's

name, the amount, to sign his name thereto, and issue them. All these facts were known to the parties, and plaintiff relied thereon and continued its contract of suretyship throughout the years.

It is pleaded that between the years 1937 and 1940, Gough appropriated to his own use the sum of $40,960. This he did by withdrawals made upon checks and his endorsement, all to the loss of Devine as receiver.

In June of 1940, Henry Church was appointed to succeed Devine as receiver. Promptly upon discovery of the misapplication of receivership funds, Church notified plaintiff, filed proof of loss and demanded reimbursement, which plaintiff promptly paid. Thereupon the receiver, in response to an order of court, assigned all his right and title to any claims as against Gough and American Surety Company growing out of the terms of their bond given to Devine as receiver.

It is alleged that Church made a partial recovery and that plaintiff reimbursed Church, receiver, for the balance of the estate's loss in the sum of $32,035.75, and in this amount judgment is asked as against Gough. Plaintiff prays for judgment against American Surety Company in the full amount of its bond, that is, $10,000.

Before proceeding to consider the question of the sufficiency of the amended petition, it must be understood that we can in no way be swayed by or concerned with the averments of plaintiff's original petition. Defendant, American Surety Company, in its brief makes repeated reference to its averment that Devine participated in the misapplication of receivership funds. That averment might, upon trial, be considered as a declaration against plaintiff's interest. But it may be explained away. But, be the fact as it may, that averment plays no part in our present inquiry.

It must be kept in mind that this is not an action brought for contribution. Plaintiff says that its claim is based upon its assigned rights, as well as upon the equitable right of subrogation. It is the latter right which has engaged practically the exclusive attention of the parties. We shall therefore confine our observations to plaintiff's right to subrogation as against Gough's surety under the averments of the amended petition.

Plaintiff asserts that its principal, Devine, as receiver, was liable to the receivership estate under the terms of his bond for any and all misapplication of its funds by him or any of those under him, and that as his surety, it was likewise bound, and that had Devine reimbursed his *cestui que trust,* he could then have caused Gough to respond to him; and that when plaintiff fully paid the claim against Devine, it stepped into his shoes and was entitled to be subrogated to any and all remedies that Devine as receiver possessed, that is, it might pursue Gough for his tortious act. To this point the trial court agreed. Plaintiff further advances that Devine could not only have pursued Gough, but also his surety under the terms of their bond, and if Devine might have pursued American Surety Company, so might it be compelled to respond to plaintiff which had acquired all of Devine's rights and remedies.

Upon the other hand, defendant, American Surety Company, maintains that the present situation is that of a surety upon an independent obligation seeking to recover from a surety upon an entirely different obligation. This claim for immunity is fortified by a rather inconsistent position taken by the surety company. It says that inasmuch as it and Maryland Casualty Company are both innocent sureties, that the casualty company is not entitled to subrogation against defendant surety company unless it pleads

and proves that it possesses a superior equity. American Surety Company further questions the plaintiff's theory by assertion of the bold claim that the equities of the two sureties are not to be measured by the guilt or innocence of their respective principals, but by their own guilt or innocence. From all of which it is insisted that the amended petition does not state a cause of action against it.

We shall not make further comment respecting the defendant surety company's claims. Neither shall we point out the inapplicability of its cited authorities other than to say that they do not fit the facts of the present suit. We shall proceed to the solution of the matter as we see it.

In *McCormick's Admr.* v. *Irwin,* 35 Pa. St., 111, 117, it is said that subrogation in suretyship is "a mode which equity adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay." To this rule we shall add that when the liabilities of innocent independent sureties are in issue the letter of their bonds must cover the faithful performance of their respective principals of an obligation common to them and which creates accountability to the same creditor source. The rule of the *McCormick case* must bear a further qualification, that is, if the equities are equal, there might be contribution but not a right of subrogation, which can be permitted only when the equity of him who seeks subrogation is superior to that of whom it is demanded.

The questioned pleading recites that Devine's bond insured the receiver estate not only against his own default but the default of any and all those under him. He was directly liable to the estate of the loan company for an embezzlement by a teller, a bookkeeper or any other employee. It is shown to be a blanket bond.

It included therein coverage for Gough's faithful performance. Gough's bond ran to the representative of the same estate, that is, to Devine as its receiver. Devine, or his successor, could not enforce it for their personal gain, but they could do so for the benefit of their respective estate. Gough's bond covered any wrongdoing on his part. Both bonds insured against the same loss, the same faithful performance. It was common to them. They were both responsible to the same creditor.

The pleading states that the loss sustained by the estate was created by Gough's wrongful appropriations. It can not be inferred therefrom that Devine was guilty of complicity therein. If the amended petition pleaded such a state of fact to exist, then clearly the trial court was right for two reasons, because their equities, if any, were in equipoise, and equity will not enforce contribution among wrongdoers. Are the equities equal? Decidedly not. It was Gough's default that caused the loss, so the pleading states. The facts as pleaded disclose that plaintiff has a superior equity. It was not necessary or proper that plaintiff plead the equitable conclusion.

Who in good conscience ought to pay this debt? Clearly the answer is that Gough should restore all that he wrongfully took. He, only, according to the pleading, reaped the benefit of his tortious act. Can the fact that American Surety Company was innocent exonerate it? We presume that by employment of the word "innocent" is meant a lack of knowledge, or joinder in the default. In other words, American Surety Company says that because it did not know that its principal, Gough, would or did do such a thing, it is not liable. This reasoning is unsound. Had it known that its principal would turn out to be a defaulter, without doubt it would never have become

Gough's bondsman and insured his faithful performance. That was the very thing it covenanted to do. It was the only purpose of the bond. It covenanted with its principal and the estate's receiver that if Gough defaulted and was unable to make restitution, that it, the surety company, would do so to the extent of $10,000.

When the plaintiff upon demand paid the obligation to the estate, which its principal was bound to pay under the terms of his bond, it did that which it had bound itself to do if Gough defaulted. By virtue of its reimbursement of its principal's creditor, plaintiff, in equity and by reason of its principal's assignment, acquired a right to subrogation not only against Gough but also his bondsman.

The rules herein applied are not new. In 60 Corpus Juris, 772, Section 82, under the title Subrogation, the rule is thus stated:

"If an official's surety has been compelled to pay for the default of a deputy or subordinate of the principal, the surety may be subrogated to the government's right against the principal, or to the principal's rights against the deputy and the sureties on the latter's bond."

In conformity to this equitable statement, we find it held in *People* v. *Schuyler*, 4 N. Y., 173, that:

"Where a sheriff, under legal process, seizes property claimed by a stranger, and requires and receives indemnity before proceeding to the final execution of the writ, his sureties, on payment of the judgment recovered against him for the erroneous seizure, are entitled to be subrogated to the indemnity."

In *Brinson* v. *Thomas*, 55 N. C. (2 Jones' Eq.), 414, 67 Am. Dec., 224, is found report of a case wherein a sheriff's surety paid a loss which resulted from the misconduct of the sheriff's deputy, and it was held that the sheriff's surety was entitled to be subrogated to

the rights of the sheriff upon his deputy's bond. It was said:

"The claim of the plaintiffs, in this case, rests upon * * * the right in Equity of a surety who pays a debt, his principal was bound to pay, to be substituted to his rights. He is also entitled in Equity to the benefit of such collateral securities as his principal has taken to secure himself."

The same court in *Blalock* v. *Peake*, 56 N. C. (3 Jones' Eq.), 323, reasserts the same rule upon a slightly different state of facts, wherein it is held, that:

"Where the sureties of a sheriff have had to pay money for the default of a deputy, in not taking a bail-bond from a defendant in a writ, they have a right in equity to be substituted to the rights of the sheriff against such deputy, and to resort to a fund which he had secured from the defendant in the original writ, to indemnify himself against the consequences of the same default."

In *Nebergall* v. *Tyree*, 2 W. Va., 474, a sheriff's surety was compelled to pay for a deputy's default. He then sued the deputy and his sureties under a provision of the statutes of that state. The statute invoked provided the same remedy that equity afforded. The court in the course of its opinion states that even if the statute did not exist, plaintiff was entitled to recover on the broad principles of natural justice. We epitomize the syllabus of the case:

"* * * If a party as surety for a sheriff, has to pay the amount of a judgment or decree, in whole or in part, on account of the default of a deputy to said sheriff, he may obtain a judgment or decree against such deputy and his sureties * * * for the amount so paid by him."

The case of *Dine* v. *Donnelly*, 134 Ky., 776, 121 S. W.,

685, may be pursued with profit. See further Stearns on Suretyship (4 Ed.), 438, Section 248.

It is the judgment of this court that the trial court erred in sustaining American Surety Company's demurrer to plaintiff's amended petition. The judgment is reversed and the cause remanded with instruction to overrule the demurrer and for such further proceeding as is necessary and proper.

*Judgment reversed.*

LEMERT, P. J., and MONTGOMERY, J., concur.