(No. 35563.—

JOHN FINLEY, Appellant, *vs.* NEW YORK CENTRAL RAILROAD COMPANY, Appellee.

*Opinion filed May 18, 1960.*

KASSLY, CARR & BONE, of East St. Louis, for appellant.

POPE and DRIEMEYER, of East St. Louis, for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

John Finley, employed as a car inspector by the New York Central Railroad, brought suit against his employer in the city court of East St. Louis for damages under the Federal Employers' Liability Act. Trial before a jury resulted in a verdict of $26,750 for the plaintiff. On defendant's motion the trial judge entered judgment for defendant notwithstanding the verdict. Plaintiff appealed to the Appellate Court for the Fourth District where the judgment was affirmed. (*Finley* v. *New York Central Railroad Co.* 22 Ill. App. 2d 362.) The cause is here for further review on leave to appeal granted by this court.

The injury for which the action was brought was sustained as plaintiff was attempting to pry shut the door of a boxcar. The door had been stuck, and the plaintiff was using a large crowbar to loosen it. As he pried with the bar, the door suddenly sprang closed and the plaintiff fell to the ground on his back. The principal issue is whether the evidence was sufficient to go to the jury on the question of negligence by the defendant. Plaintiff contends there was evidence that defendant negligently failed to furnish him with reasonably suitable tools, that defendant was negligent in ordering him to close damaged and defective doors, and that defendant negligently failed to inspect and repair the damaged and defective car doors.

The record shows that plaintiff was working on the night shift at defendant's East St. Louis yards, commonly known as the Lower Yards. These yards consisted of 35 tracks, three of which were called shop or repair tracks on which damaged or defective cars were repaired. The railroad also maintained another yard, called the Brooklyn Yards, to which cars were moved from the Lower Yards and made up into trains for movement to destinations. As part of his work as a car inspector at the Lower Yards plaintiff was required to examine cars for defects, to per-

form minor repairs, to close the doors on the cars, and in case defects are discovered, to make out a "bad order report" so the car can be moved to the shop tracks for repairs.

On January 31, 1957, at about 1 :30 A.M. the plaintiff came upon a loaded freight car with its steel double doors standing open on each side. He reported this to a railroad policeman, who requested the plaintiff to go back with him and help close the doors. The two men succeeded in closing the doors on the south side of the car, but one of the doors on the north side stuck when it was within four or five inches of being closed. They tried to complete the closing of the doors with the "puller," a leverage device attached to the door for this purpose, but it was bent and failed to operate properly. Plaintiff then went to the inspector's shanty to get a large crowbar to pry the door loose. He inserted the end of the bar behind a strip of metal on the car and pried against the door. When he first pulled on the bar nothing happened and the door did not move. He then exerted more strength, and as he pulled harder the door suddenly jumped closed and he fell to the ground on his back. He picked up the bar and took it back to the inspector's shanty, where he hung it up inside. He then wrote up the fact that he had closed the doors on the car; and after notifying the foreman that he had hurt his back he drove home in his car. Later that day he consulted a physician.

To sustain his burden of proving negligence by the railroad, plaintiff offered his own testimony and that of two supervisory employees called as adverse witnesses under section 60 of the Civil Practice Act. Plaintiff testified that he had been told by his foreman to close all car doors, if possible, including defective ones; that the car door in question was dented, bent and out of alignment, so that instead of running freely it was binding against the track; that the only tool available to him was the

crowbar; that chain jacks were made available for use in closing car doors during the day shift and the second shift, but none were provided for the night shift; and that at defendant's Brooklyn Yards, located about three miles away, a chain jack is made available twenty-four hours a day. A chain jack is a ratchet device with a hook at each end of a chain. When used to close car doors one end is hooked to the door and the other to some piece on the car. It is operated by working the ratchet with a lever, thus applying steady pressure, and very little effort is required on the part of the operator. Plaintiff further testified, on cross-examination, that as a car inspector he had a duty to report any defect he found on car doors and that he did not make out any bad order report on the present door "because sometimes we get somebody written up for that."

Testimony by the two supervisory employees called by the plaintiff as adverse witnesses showed in substance that during the night shift at the Lower Yards, the only tools available to close difficult doors are crowbars; that chain jacks are kept at the repair tracks where they are used in closing car doors; that if it is necessary to use one to close a door before moving a car to the repair tracks, a repairman is called from the repair tracks; that the repair tracks are used only during the day shift; and that a chain jack is available 24 hours a day at the Brooklyn Yards.

Defendant introduced testimony from its car foreman, other car inspectors in its employ, and several supervisors from other railroads to the effect that chain jacks were not furnished car inspectors; that they are used occasionally on the repair track by car repairmen to close doors that are hard to close, and if a car is in transit the car repairman takes the chain jack from the repair track to the car or has the car sent to the repair track; that car inspectors at defendant's Lower Yards had instructions to "bad order" a car and move it to the repair tracks if its doors could

not be closed by hand or with a bar; and that the car in question was examined later in the morning of the accident and the doors were found to be in satisfactory operating condition, being neither bent nor out of alignment. It had snowed the night preceding the accident, and defendant's wreckmaster testified that snow or ice could have caused the doors to stick. Defendant's general car foreman, car inspectors employed by defendant and car inspectors of other railroads testified that a crowbar is the standard or customary tool used to close doors that are stuck or difficult to close and that car inspectors did not use chain jacks for that purpose. An assistant foreman employed by defendant stated that on one occasion when a train was made up and ready to depart a chain jack was used to close the door in order to avoid breaking up the train and taking the car out for that purpose.

The rules to be applied in deciding questions such as the present one are well established. Under the Federal Employers' Liability Act a carrier is liable in damages for injury resulting in whole or in part from the negligence of any of its officers, agents, or employees. Assumption of risk is no longer a defense, nor does contributory negligence bar a recovery. In determining whether a verdict in plaintiff's favor is supported on the record, the sole question is whether there is any evidence, considered in the light most favorable to the plaintiff, that defendant was guilty of negligence which contributed in whole or in part to the injury. (*Hall* v. *Chicago and North Western Railway Co.* 5 Ill.2d 135; *Bonnier* v. *Chicago, Burlington & Quincy Railroad Co.* 2 Ill.2d 606.) The United States Supreme Court has recently observed that "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on

grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." *Rogers* v. *Missouri Pacific Railroad Co.* 352 U.S. 500, 506-507, 1 L. ed. 2d 493, 499.

While it is the jury's function to decide the factual questions whether the defendant was negligent and whether such negligence was a proximate cause of the injury, the decision must be supported by something more than mere speculation. (*Moore* v. *Chesapeake & Ohio Railway Co.* 340 U.S. 573, 95 L. ed. 547.) Unless there is evidence from which the inference may reasonably be drawn that the injury was caused by some negligent act of the employer, the case must be withdrawn from the jury. (*Atchison, Topeka & Santa Fe Railway Co.* v. *Toops,* 281 U.S. 351, 74 L. ed. 896.) Where, as here, a motion is made for judgment notwithstanding the verdict, a question of law is presented as to whether, when all the evidence is considered together with all reasonable inferences therefrom in its aspect most favorable to the plaintiff, there is a total failure or lack of evidence to prove a necessary element of plaintiff's case. (*Bonnier* v. *Chicago, Burlington & Quincy Railroad Co.* 2 Ill.2d 606.) If the evidence is such that without weighing the credibility of the witnesses, and upon considering it in its aspects most favorable to the plaintiff, there can be but one reasonable conclusion as to the verdict, the court should direct a verdict or enter judgment notwithstanding the verdict. *Brady* v. *Southern Railway Co.* 320 U.S. 476, 88 L. ed. 239.

In the case at bar the plaintiff does not contend that a crowbar is an unsafe tool in itself, nor does he deny that it is the standard tool customarily used for closing doors on loaded boxcars. He insists, however, that it is not

reasonably safe or suitable for use in closing defective, damaged or hard-to-close doors. The evidence when viewed in the light most favorable to the plaintiff shows that while he had received written orders to shop all cars with defective doors, his foreman had given him verbal instructions to discontinue doing so; that he was ordered to close all doors the best he could, and if he was unable to close the door, "to let it run"; and that at the request of defendant's railroad policeman he undertook to help close the doors on the car in question. There is also testimony to the effect that the door was bent and out of alignment; that chain jacks were frequently used to close damaged doors, and were available at the repair shop during the day shift; that a chain jack is safe, effective and easy to use, and that no chain jacks were provided for use at the Lower Yards during the night shift. It is undisputed that the only tool available to the plaintiff was the crowbar.

Considering the evidence as a whole, with all reasonable inferences which may be drawn therefrom, we think there is sufficient evidence from which the jury could find that defendant failed to furnish tools suitable for the job plaintiff was expected to do, and that such failure contributed at least in part to the injury. Under the Federal Employers Liability Act the employer must use reasonable care to provide tools and equipment that are safe and suitable for the purpose of the work. (*Deckert* v. *Chicago & Eastern Illinois Railroad Co.* 4 Ill. App. 2d 483; *Margevich* v. *Chicago and Northwestern Railway Co.* 1 Ill. App. 2d 162.) In the case at bar the jury could reasonably infer that boxcar doors which are damaged and binding may suddenly spring loose when pressure is applied; that a crowbar, not being fixed or fastened in position, will lose its pry if the object pried against suddenly springs away, and that under such circumstances there is a risk that the person using it may fall or lose his balance. Evidence that at other times a chain jack was available and was used for hard-to-close

doors indicates some recognition by defendant that a bar is not sufficient; and the jury might properly infer therefrom that in providing nothing more than a bar for use during the night shift in closing damaged or stuck doors, defendant failed to furnish tools which are reasonably safe, efficient and suitable for such work.

The fact that contrary inferences would be equally supported by the evidence is not sufficient to show unreasonableness of the verdict. It is the jury's function to weigh contradictory evidence, judge the credibility of the witnesses and draw the ultimate conclusion as to the facts. Its conclusion, whether relating to negligence, causation, or any other factual matter should not be set aside merely because different conclusions could be drawn or because judges feel that other results are more reasonable. *Dowler v. New York, Chicago and St. Louis Railroad Co.* 5 Ill.2d 125.

We hold, therefore, that there was sufficient evidence to support the verdict for the plaintiff. The judgment of the Appellate Court and the judgment of the city court of East St. Louis are reversed, and the cause is remanded to the city court of East St. Louis with directions to enter judgment on the verdict.

*Reversed and remanded, with directions.*