Betty Dunlavey, Plaintiff-Appellant, v. Thomas Patti, Defendant-Appellee.

Gen. No. 66–36.

Third District.

February 16, 1967.

Bissonnette & Nutting, of Kankakee, for appellant.

Ackman, Henry & Benson, of Kankakee, for appellee.

CORYN, J.

This is a guest passenger suit in which plaintiff, Betty Dunlavey, the passenger, was awarded an $8,000 jury verdict against defendant, Thomas Patti, the driver. Subsequently, on defendant's post-trial motion, the trial judge set aside both the verdict and the judgment entered thereon, upon the grounds that they are contrary to the manifest weight of the evidence, and a new trial was ordered. We have granted plaintiff's petition for leave to appeal from the order granting a new trial.

The accident from which this controversy arises occurred on Sunday, November 5, 1961, at approximately 12:10 a. m., when a vehicle being operated by defendant, and in which plaintiff was a passenger, collided with a parked automobile in the 100 block of North Greenwood Avenue in Kankakee. Police Officer Luke Martin, who was called to the scene of the accident at 12:15 a. m., stated at the trial that his investigation of the accident at that time indicated that defendant's vehicle had been traveling in a southerly direction on Greenwood Avenue, and that it struck an automobile properly parked on the east side of the street. He testified that defendant said of himself, while riding in the squad car from the

443

scene to the hospital, that he must have fallen asleep at the wheel of his car. Plaintiff testified that she went to the Circle Bar at approximately ten o'clock in the evening, where she met defendant, an acquaintance of hers since childhood, that they left together in defendant's new automobile, and drove to his tavern located at 803 North Wildwood in Kankakee. She stated that she did not go into this tavern, but waited outside in defendant's car for him to return. Defendant was in the process of taking her to her automobile when the accident occurred. She related that they were driving in the correct lane of traffic, when suddenly defendant's car turned or veered to the left, and struck the parked automobile. She testified that she sustained injuries to her ankle, which required her to use crutches, and severe injuries and cuts to her face, which required plastic surgery. Defendant testified, however, that when he and plaintiff arrived at his tavern, plaintiff entered with him, and sat at the bar drinking a Coke and watching television. He stated that William Chigaros, his night watchman at the tavern, left to get some pizza, and that upon Chigaros's return, they all ate pizza at the bar. While Chigaros was gone, defendant put his head on the bar and slept, and again slept after he had finished eating pizza. Patti admitted that he fell asleep while driving his car, and that at that time plaintiff was a guest in his car. Defendant stated that when he was ready to leave his tavern, Chigaros told plaintiff that she should drive because defendant was tired, but that she in turn said of him that he hadn't been drinking, seemed to be all right, and should drive his own car. He testified also that he remembers leaving his tavern, and that he was awake and felt that he could drive all right. He stated that he "didn't even feel sleepy" upon driving from his tavern, and that the first time he dozed off was when the accident occurred. He said he would not have gotten into his car to drive if he did not think he was able to do so. The evidence indicates that

defendant had not had any sleep since the previous Thursday night, and that this fact was not known to plaintiff. William Chigaros corroborated the testimony of his employer. He testified that he was in defendant's tavern at the time plaintiff and defendant came in, and that he borrowed defendant's car to get pizza and bring it back. He stated that defendant fell asleep at the bar, and that when the late television movie was over, he suggested to Mrs. Dunlavey that she drive, as defendant was tired. Plaintiff denied this conversation and also denied that she was ever in defendant's tavern. In addition to this conflict in the evidence regarding plaintiff's presence in defendant's tavern, there are other discrepancies within plaintiff's testimony regarding the time of her arrival at and departure from both the Circle Tap and defendant's tavern. There is no conflict in the evidence, however, regarding the facts from the time plaintiff and defendant left defendant's tavern to the time the accident occurred.

There is no claim by either party to this appeal that error requiring a new trial was committed during the course of the trial of this case. It is claimed only that the verdict was contrary to the manifest weight of the evidence, and that the trial court correctly, for this reason, granted a new trial. In its memorandum of opinion, the trial court observed that plaintiff's testimony was inconsistent regarding the times of day that she entered and left the Circle Tap and arrived at defendant's tavern, and also that plaintiff's denial that she had entered defendant's tavern was in direct conflict with the testimony, on this subject, of both Chigaros and defendant. The trial court further concluded that "In order to believe the plaintiff one would have to completely disregard this testimony [i. e., testimony of William Chigaros] as being a figment of the imagination on the part of the witness, which the Court cannot do, even though the Jury did so."

■ A court of review will not reverse an order of a trial court, granting a new trial, unless the record clearly shows an abuse of discretion. An abuse of discretion is shown, however, where it appears that the trial court set aside a verdict and granted a new trial merely because it would have decided the case differently had it been the trier of fact, or because it feels that inferences or conclusions other than those drawn by the jury are more reasonable. The trial court cannot substitute its inferences and conclusions of fact for those drawn by the jury if those drawn by the jury find reasonable support in the evidence, Foster v. VanGilder, 65 Ill App2d 373, 213 NE2d 421, for it is the jury's function to weigh the conflicts and discrepancies in the evidence, to determine if the witnesses' testimony is credible, in whole or in part, and to draw the ultimate conclusions of fact. Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212.

■ Here, the trial judge, in his memorandum of opinion, candidly states that his reason for concluding that the verdict was contrary to the manifest weight of the evidence was that he did not believe the plaintiff's testimony, even though, as he concluded, the jury did. In other words, the trial judge substituted his inferences on the issue of plaintiff's credibility for the contrary inferences drawn by the jury. We are of the opinion that the trial court was in error in so doing, as we conclude that the inferences drawn by the jury have reasonable foundation in the evidence. The jury's finding that the defendant was guilty of wilful and wanton misconduct in the operation of his automobile, which proximately caused the collision and resulting injuries to the plaintiff, and that plaintiff was free from contributory wilful and wanton misconduct, which were ultimate issues of fact to be determined in this case, are not contrary to the manifest weight of the evidence.

Accordingly, the order of the Circuit Court is reversed, and the cause is remanded with directions to vacate the order granting a new trial, and to enter an order reinstating the judgment entered on the verdict for plaintiff.

Reversed and remanded with directions.

STOUDER, P. J. and ALLOY, J., concur.