**Phillip Dobson, Plaintiff-Appellant, v. Bernard Rosencranz, Defendant-Appellee.**

Gen. No. 66–32.

Third District.

April 4, 1967.

Rehearing denied and opinion modified May 18, 1967.

Kevin Kelly, of LaSalle, for appellant.

Herbolsheimer & Lannon, of LaSalle, and Berry & O'Conor, of Ottawa, for appellee.

CORYN, J.

Phillip Dobson, plaintiff, instituted this action to recover for personal injuries allegedly sustained on October 1, 1962, when automobiles being driven by him and by defendant, Bernard Rosencranz, collided in the intersection of First and Joliet Streets in LaSalle. The jury returned a verdict for plaintiff in the sum of $18,000, upon which judgment was entered, and thereafter, upon motion of defendant, the Circuit Court of LaSalle County granted a new trial. We have previously allowed plaintiff's petition for leave to appeal from that order. Plaintiff contends that the trial court abused its discretion in granting a new trial, and in support of this contention, argues that the record discloses a preponderance of evidence from which the jury reasonably could have concluded that defendant (1) negligently failed to yield the right-of-way, or (2) negligently failed to keep a proper lookout, or (3) negligently failed to stop, slow, or turn his automobile to avoid the collision. Defendant contends that plaintiff failed to establish his cause of action by a preponderance of evidence, and that the trial

court properly exercised its discretion in granting a new trial.

The record discloses that on October 1, 1962, at approximately 4:00 p. m., plaintiff, accompanied by his wife, was driving north on Joliet Street near its intersection with First Street in the City of LaSalle. This intersection was controlled by stop lights. Visibility was clear and the pavement was dry. The intersecting streets upon which plaintiff and defendant were respectively traveling were each between forty-five to forty-eight feet in width. Plaintiff testified that as he approached the intersection, the traffic light controlling traffic on Joliet Street was red, and that therefore he brought his car to a stop about three feet back from the crosswalk line. Also stopped at the light in the lane to the left of plaintiff's car, and slightly ahead, was a large gravel truck with lights signaling for a left turn. The names of the owner and driver of that truck are unknown. Another automobile, driven by Richard P. Bligh, was stopped immediately behind plaintiff's car. Plaintiff, his wife, and Bligh all testified that the truck obscured their vision to the left as the vehicles were stopped for the red light so that they could not see the traffic control light governing traffic on First Street, although they could clearly see the traffic control lights governing traffic on Joliet Street. Plaintiff testified that he remained stopped until the traffic light to his right turned green, and that he then started forward at an estimated speed of twelve to fifteen miles an hour. Mrs. Dobson testified that her husband did not accelerate his vehicle until about three seconds after the light had turned green, and that the truck started forward a little bit before them, and then suddenly stopped after going about four feet into the intersection, after which defendant's vehicle suddenly passed from the left in front of the truck and the collision occurred. Defendant testified that he saw the truck at the intersection, but did not see plaintiff's car until

441

an instant before the collision. He stated that the light controlling traffic on First Street was green when he entered the intersection, and that it changed to amber when he was in the center of the intersection. He stated that he was traveling at approximately fifteen miles per hour as he approached the intersection, although witness Bligh estimated defendant's speed at approximately twenty-five to twenty-eight miles per hour as it traveled in the intersection.

After the accident, plaintiff, defendant and Bligh got out of their automobiles. Bligh testified that he then said to Rosencranz: "Fellow, you just run a red light." Bligh said that Rosencranz replied: "I guess I did." Defendant Rosencranz admitted at the trial that Bligh had made this accusation, but testified that he then denied the charge, and stated that he did not run a red light. Dobson, in his testimony regarding this conversation, stated that defendant replied: "Yes, but I thought I could make it."

Both parties agree that the only issue before this court is whether the trial court properly exercised its discretion in granting a new trial. This issue has frequently been presented to us, and in the recent case of Dunlavey v. Patti, 79 Ill App2d 442, 223 NE2d 858, we stated the applicable rule of law to be as follows:

"A court of review will not reverse an order of a trial court, granting a new trial, unless the record clearly shows an abuse of discretion. An abuse of discretion is shown, however, where it appears that the trial court set aside a verdict and granted a new trial merely because it would have decided the case differently had it been the trier of fact, or because it feels that inferences or conclusions other than those drawn by the jury are more reasonable. The trial court cannot substitute its inferences and conclusions of fact for those drawn by the jury if

442

those drawn by the jury find reasonable support in the evidence, Foster v. VanGilder, 65 Ill App2d 373, 213 NE2d 421, for it is the jury's function to weigh the conflicts and discrepancies in the evidence, to determine if the witness's testimony is credible, in whole or in part, and to draw the ultimate conclusions of fact. Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212."

In the instant case, the defendant's post-trial motion sought a judgment notwithstanding the verdict, or in the alternative, a new trial. The trial court denied the motion for a judgment notwithstanding the verdict, but granted a new trial for the stated reason that the plaintiff did not sustain his burden of proof by a preponderance or greater weight of the evidence. The trial judge prepared a memorandum of opinion which contained his evaluation of the evidence and his reasons for concluding that the plaintiff had failed to sustain the burden of proof. In this memorandum he observed that it was plaintiff's burden to prove that he had the right-of-way and that defendant was not lawfully in the intersection. The evidence admitted to meet this burden was noted in said memorandum to consist of the conversation between plaintiff, Bligh, and defendant immediately after the collision wherein Bligh charged defendant with having proceeded through a red light, and the evidence concerning the speed and the time and the distances traveled by the several vehicles at the intersection, which was argued by plaintiff to prove or corroborate that defendant entered the intersection on a red light. With respect to the conflicting testimony regarding the conversation between Bligh and defendant, immediately after the accident, the trial judge remarked:

"This then leaves as the only evidence concerning the color of the stop light when the defendant entered the intersection the positive statement [at the trial]

443

of the defendant that it was green and changed to yellow. This is opposed by the alleged admission of the defendant [at the scene]. As pointed out above there is a vast difference between the exact language used by the defendant in the admission as related by Bligh from that related by the plaintiff himself. If we are going to have the jury determine what the defendant meant by such an admission then the words used must be submitted to the jury for their interpretation. The variance in the wording of this alleged admission as related by these two witnesses is substantial, if not contradictory. Admittedly admission will constitute strong evidence of a fact to be proven, however, admissions must be specific and not some witness's interpretation of what was said. These two statements were given as exact language used by the defendant and obviously they do not constitute the exact language of the defendant."

With respect to the testimony of the several witnesses who gave estimates of time, speed and distance, the trial court commented as follows:

"No one's power of recall is so perfect that he can some three years after an accident with precision detail whether one, two, three or four seconds are involved in a particular transaction, or whether a particular distance involved is ten, fifteen, or twenty feet, or whether the speed of the vehicle, as he recalls it, was ten, fifteen or twenty miles per hour, and a slight deviation in any of these variables could be used to prove or disprove either side of the case. Accordingly, I am not going to split hairs, and I consider any evidence based on these computations to be of the very weakest kind."

■ It is a matter of interest to us that while one trier of fact, on one occasion, will give as a reason for minimizing the value of certain testimony that "no one's power of recall is so perfect as to permit such accurate recall after the lapse of so much time as was demonstrated here," the same, or another trier of fact, on a different occasion, will sometimes give as a reason also for discounting the value of similar testimony the opposite premise that "the inability of the witnesses to be consistent on such points cannot be unnoticed." The premise that no one's power of memory is so perfect as to permit exact recall might have been applied here by the trial court, as perhaps it was by the jury, to reasonably explain the variations in the versions of plaintiff and Bligh as to the alleged admissions made by defendant at the scene. But the trial court did not apply this premise in that instance; rather it found the variations substantial and unreasonable, suggesting that consistency should be required here, while consistency in the testimony as to distances and speed was thought suspect. We do not doubt that some reasonable men will agree with the inferences and conclusions of the trial court in this respect as to when perfect consistency should be required and when it is cause for suspicion, and as to the value of opinion testimony on distances and speed. It also seems apparent, however, that other reasonable men would agree with the opposite conclusions reached by the jury, that is, that the variation in the testimony of plaintiff and Bligh as to the admissions of defendant is only slight, the gist of both being that defendant candidly acknowledged having entered the intersection unlawfully, and that the testimony of distances, time, and speed are corroborative of this admission. We think there is reasonable basis in the record for the determination made by the jury, and we conclude that the trial

court usurped the function of the jury by substituting for the jury's conclusions its conclusions as to whether the testimony of Bligh, Dobson, or Rosencranz was true and/or accurate regarding the conversation after the accident, and the reliability and weight to be given to this and the evidence of distances and speeds.

Bernard Rosencranz, defendant, was called as a witness by plaintiff under section 60 of the Illinois Civil Practice Act. In commenting on this testimony, the trial judge stated:

> "The type of cross-examination which Mr. Rosencranz was subjected to under § 60 may have had the effect of weakening his testimony in the minds of the jury, and counsel may have, by the asking of his questions and the tone of his voice, been able to implant in the minds of the jury that what Mr. Rosencranz was saying was not the truth. . . ."

No objections were made during the trial by defendant to the method and manner of this cross-examination, and he did not raise the issue in his post-trial motion, and we do not find that the method and manner of this examination was objectionable. Section 60 permits an adverse party to be questioned as if under cross-examination, and during this type of examination leading questions are permissible. Cleary, Handbook of Illinois Evidence (2d Ed), § 6.11. The record here discloses that Rosencranz was examined by the plaintiff under § 60 by the usual method of using leading questions. Again, it was for the jury to determine the credibility and weight to be given his testimony.

■ ■ It is argued by defendant, again in reference to the § 60 cross-examination of the defendant, that the printed record cannot reveal the tone of voice of plaintiff's counsel, or the unfairness of the mode of his questioning on cross-examination reflected by his attitudes, all of which were observed by the trial judge to support

446

an order for a new trial, and that the judgment for new trial must be sustained in the absence of any clear showing that it derives from an abuse of discretion. We find this argument illusory. The demeanor of the witnesses and of plaintiff's counsel were equally apparent to the jury. The evidence in the record supports the verdict, and the argument that the trial court for reasons or considerations that do not appear of record, has the authority to refuse a judgment on that verdict and to order a new trial suggests, in our opinion, an unlimited and arbitrary power, not a judicial discretion. If an exercise of "discretion" may be rested purely upon such matters not of record, as defendant suggests to be so, then such an order is not subject to review at all and is for that reason an arbitrary power. It is misleading to assert in such circumstance that an abuse of discretion could ever be shown. Defendant has stated that "historically, and to the present time, the trial judge has had virtually the unlimited power . . . to grant a new trial when deemed warranted." This is, perhaps, an accurate observation of the historical circumstance where, prior to the Civil Practice Act, orders granting new trials were not appealable. The purpose of the Civil Practice Act in making such orders appealable, however, was to abolish an unlimited and arbitrary power in this area, and to substitute therefor, a judicial discretion exercisable within the confines of what is reasonable on the record as measured against the restraints imposed by the power of review. The record must, in our judgment, demonstrate a reasonable basis for an order granting a new trial, in the absence of which showing, we feel required to regard such an order as error. In Magnani v. Trogi, 70 Ill App2d 216, 218 NE2d 21, we considered that greater latitude is allowed a trial court in granting a new trial than in denying it, and accordingly, that error in a record made by the court or jury is appropriately corrected by an order for a new trial even where such error would not constitute reversible

447

error to a court of review. But some error must appear in the record as the purpose for granting a new trial. The record herein demonstrates that this case was fairly tried by competent counsel. As the jury's verdict is supported by the evidence, and no error appears of record, a new trial should not have been granted by the trial court.

For the reasons assigned, the order of the Circuit Court granting a new trial is reversed, and the cause is remanded with directions to enter an order reinstating the judgment entered on the verdict for the plaintiff.

Reversed and remanded with directions.

STOUDER, P. J., concurs.

ALLOY, J., dissenting.

I cannot agree with the conclusion of my colleagues in this case. I do not believe that determination of the propriety of the action of the trial judge in the granting of the new trial involves a substitution by the trial court of his conclusion in opposition to one which the jury has properly reached.

Both parties agree that the only issue before this court is whether the trial court properly exercised the trial court's broad discretion in allowing a new trial. It is apparent that a trial judge is justified in granting a new trial where the plaintiff fails to prove his case by the preponderance or the greater weight of the evidence (Read v. Cummings, 324 Ill App 607, 609, 610, 59 NE2d 325; Mesich v. Austin, 70 Ill App2d 334, 352, 217 NE2d 574). As indicated by the court in the case of Read v. Cummings, supra, at page 609:

> "But after the verdict is returned a different question arises. It is then the duty of the trial judge to consider the weight of the evidence and if he is of opinion that plaintiff has not proven his case by a preponderance of the evidence, taking into considera-

tion the fact that the jury has found otherwise, it is his duty to set aside the verdict and grant a new trial. And if the court does not do so but overrules the motion and enters judgment and the case is then brought to this court, we are not authorized to disturb the verdict on this ground unless the verdict and judgment are against the manifest weight of the evidence. This court in passing on the question must take into consideration not only the verdict of the jury but the fact that the trial judge saw and heard the witnesses, overruled the motion for a new trial and entered judgment. It requires much more for this court to set aside a verdict and judgment than is required of the trial judge. It is his duty to set aside the verdict if he is of opinion that the plaintiff has not sustained his case by a preponderance of the evidence, while the question of the preponderance of the evidence does not arise at all in this court."

Accordingly, unless there is a clear abuse of discretion, a court of review will not set aside the order of a trial court granting a new trial, although as we have said in Foster v. VanGilder, 65 Ill App2d 373, 377, 213 NE2d 421:

"The trial judge, however, should not set aside a verdict and grant a new trial merely because he would have decided the case differently if he had been the trier of fact. Stobbs v. Cumby, 9 Ill App2d 138, 132 NE2d 448; Bobtex Industries v. Continental Baking Co., 4 Ill App2d 377, 124 NE2d 78; Read v. Friel, 327 Ill App 532, at 538, 64 NE2d 556; Finley v. New York Cent. R. Co., 19 Ill2d 428, at 436, 167 NE2d 212; or because he feels that inferences or conclusions other than those drawn by the jury might be more reasonable. Rouse v. New York Cent. & St. L. R. Co., 349 Ill App 139, at 146, 110 NE2d 266;

449

Kahn v. James Burton Co., 5 Ill2d 614, at 623, 126 NE2d 836."

We are confronted in this case with the typical concern which arises when a trial court allows a motion for a new trial. In the cause before us, the trial court, in a written memorandum of opinion, emphasized that the jury was unduly confused by inferences and statements made by counsel in examination of witnesses, which inferences were not based on evidence, and the court apparently felt that a new trial was required by reason of such examination as well as the feeling of the court that there was a failure of proof by a preponderance of the evidence.

The arguments and discussions of counsel in this case, and in many cases which have been determined in the courts of this State, have disclosed a confusion as the role of the trial court in determining whether to grant a new trial, notably where the trial court determines that the verdict is not based upon the preponderance of the evidence. This right of the trial court to grant a new trial where there is a failure to establish plaintiff's cause of action by a preponderance of the evidence is not an empty gesture, but is a realistic implementation of the obligation of a plaintiff in proving his case by a preponderance of the evidence, as expressed under the law of this State and in appropriate instructions to the jury as to such law. If the jury in fact fails to heed such instruction relating to preponderance, the trial court has the right to order a new trial. This right, however, is not based upon a substitution by a trial court of his interpretation of the facts or a conclusion that the jury's interpretation of the facts or inferences were not such as he would reasonably have concluded. The position of the trial court in this respect is entirely different from that of this court on appeal where the verdict is required to be contrary to the manifest weight of the evidence before the court would reverse. The trial judge

has the primary role in determining whether a fair trial has been conducted and whether the basic principles of law applicable have been adhered to. In certain areas, such as the granting of a new trial, he is given a broad, though not unlimited, discretion. Unless such discretion is abused, the court of review would not set aside an order granting a new trial.

To say, in effect, that a trial court has no alternative other than to arbitrarily direct a verdict or enter a judgment notwithstanding a verdict or let the verdict stand would eliminate that unabused discretionary power of the trial court, and would permit the jury to be the conclusive arbiter in all cases unless the verdict of the jury is completely contrary to the manifest weight of the evidence. This would be a departure from a basic legal principle governing liability in this State that a cause of action is required to be established by a preponderance or greater weight of the evidence.

The test, therefore, becomes whether or not the trial judge abused his discretion in granting the new trial under the facts in the instant case. If the only issue in this court was whether or not the verdict was contrary to the preponderance of the evidence, I would concur with the conclusion of my colleagues. In this cause, however, the trial court obviously felt that, as a result of innuendos or misleading forms of questions, the jury may have been misled not only as to the condition of the lights but as to the other issues. While objections were not shown to have been specifically made so that the testimony was not ordered stricken, the effect thereof could still have been considered by the trial court in determining whether to allow the motion for the new trial (Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 43, 176 NE2d 551; Mattice v. Klawans, 312 Ill 299, 143 NE 866; Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 51 NE2d 216).

451

Since the trial court had the benefit of observing the appearance and demeanor of the witnesses and the manner in which they testified and all the circumstances attending the testimony, the trial court is obviously in a better position to weigh the evidence than is a court of review. The right of the trial court to determine whether or not a new trial should be granted for failure to establish plaintiff's case by a preponderance of the evidence or because a jury was misled by counsel's questioning is underscored by the precedents referred to in this opinion. In analyzing all of the evidence relating to the issues as to failure to yield the right of way, failure to keep a proper lookout, and failure to stop or slow or turn defendant's automobile to avoid the collision, or in the determination of whether the jury was misled by counsel's questioning, I feel we cannot say the trial court abused its discretion.

As indicated, the trial court is allowed a broad discretion in granting a new trial and such motion is addressed to the sound judgment of the court. Unless we find that an abuse of discretion is affirmatively shown, a trial court's decision in granting a new trial should not be reversed. In such cases, the courts of review have uniformly concluded that the trial judge, principally because he can observe the witnesses and their manner of testifying and the circumstances aiding in determination of credibility and the effect of questioning on jurors, is in better position than a court of review to weigh the evidence or determine the ultimate question of whether the trial was fairly conducted. It is not a question of whether our conclusion would be the same under such circumstances. Unless there has been a clear abuse of discretion, the granting of the new trial by the trial court should not be disturbed on review.

On the basis of the record before us, therefore, I believe that the granting of a new trial in this cause does

not constitute such an abuse of discretion as would justify us in setting aside such action of the trial court. I feel that the order of the trial court should be affirmed.