JAMES HORTON, Plaintiff-Appellant, *v.* THE CITY OF OTTAWA *et al.*, Defendants-Appellees.

Third District No. 74-420

Opinion filed July 21, 1976.—Rehearing denied August 25, 1976.

Wolslegel & Armstrong, of Ottawa (Craig Armstrong, of counsel), for appellant.

Herbolsheimer, Lannon & Henson, P. C., of La Salle (T. Donald Henson, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

■■ Plaintiff James Horton filed this action to recover for personal injuries suffered when he was thrown from his motorcycle after striking a large hole in a city street. Following a jury trial, a verdict was entered for $50,000 against both the City of Ottawa and Marseilles Plumbing and Heating Company which had torn up the street for private sewer work several years earlier. In ruling on post-trial motions, the trial court granted defendants' motion for a new trial on the issue of damages but denied defendants' request for remittitur, for judgments notwithstanding the verdict, and for a new trial on the issue of liability. We have granted plaintiff leave to appeal from the order for a new trial on the issue of damages. Defendant City[1] has submitted the issue of municipal immunity from liability for plaintiff's injuries, as permitted under Supreme Court Rule 306 (Ill. Rev. Stat. 1975, ch. 110A, par. 306), which permits this court to review all rulings of the trial court on post-trial motions without the necessity of a cross-appeal.

The threshold question is whether the defendant city is immune from liability for injuries caused by a defect in the street. Defendant relies on sections 2—109 and 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, pars. 2—109 and 2—201), which are as follows:

> "§2—109. A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not .liable."

> "§2—201. Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

As defendant notes, section 2—201 is actually a codification of the common law doctrine known as public official immunity, which was held in *Nagle v. Wakey* (1896), 161 Ill. 387, 43 N.E. 1079, to bar recovery from a township road commissioner who had failed to put railings on a township bridge so that plaintiff and his team of horses went off the side in midstream. The court concluded that the commissioner had exercised his judgment and discretion in applying the money available to repair roads and bridges in his township, and he could not thereafter be sued personally for the manner in which he exercised that judgment.

After local governmental immunity was abolished in the famed decision in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, it was held that public official immunity nonetheless survived to protect government officers from personal

---

[1] Marseilles Plumbing is not a party on appeal.

liability for injuries resulting from holes in public streets and highways under their care. (*Ten Eicken v. Johnson* (1st Dist. 1971), 1 Ill. App. 3d 165, 273 N.E.2d 633; *Lusietto v. Kingan* (3d Dist. 1969), 107 Ill. App. 2d 239, 246 N.E.2d 24; contra, *Kitto v. Wattleworth* (2d Dist. 1960), 24 Ill. App. 2d 484, 164 N.E.2d 817.) None of these cases was decided under the tort immunity statute.

Defendant argues that, under both the statute and case law, the official in charge of city streets is not liable, and therefore the city which employs him is similarly immune from liability under section 2—109. Defendant cites *Thiele v. Kennedy* (3d Dist. 1974), 18 Ill. App. 3d 465, 309 N.E.2d 394, where a prisoner sued the sheriff and the county for injuries suffered at the hands of fellow jail inmates, and *Woodman v. Litchfield Community School District No. 12* (5th Dist. 1968), 102 Ill. App. 2d 330, 242 N.E.2d 780, where a second grade student sought to recover for injuries received when kicked in the head by another student. Both cases were based on the alleged failure of persons in authority to maintain control and discipline, and in both the governmental entity was held to have immunity under section 2—109.

While we acknowledge the seemliness of defendant's logic, we find that defendant would have us disregard article III of the tort immunity statute which deals with liability for injury occurring in the use of public property. Section 3—102 (Ill. Rev. Stat. 1975, ch. 85, par. 3—102) states the general rule of liability arising out of use of governmental property, as follows:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition."

■■ ■ Subsequent sections of article III spell out those specific situations involving use of public property where governmental immunity will be recognized, such as where the injury is attributed to the plan or design of an improvement (section 3—103), failure to provide traffic signals and signs (section 3—104), park and playground property (section 3—106), roads or trails providing access to recreational areas (section 3—107), and failure to supervise use of property (section 3—108). Section 3—105 contains a significant limitation on liability for injuries resulting from use of streets:

"Neither a local public entity nor a public employee is liable for an injury caused by the effect on the use of streets, * * * of weather conditions as such. For the purpose of this section, the effect on the use of streets, * * * of weather conditions includes the effect of wind, rain, flood, ice or snow *but does not include physical damage to or deterioration of streets, * * * resulting from weather conditions.*" (Emphasis added.)

The plain language of the provisions in article III demonstrates the legislative intention to continue the common law liability of local governments for failure to maintain streets in a condition reasonably safe for public use (*Hanrahan v. City of Chicago* (1919), 289 Ill. 400, 124 N.E. 547; 9 Ill. L. & Pr. *Cities, Villages, etc.* §491 (1954)), provided the governmental entity has either actual or constructive notice of the defect in time to have corrected the condition. *Livings v. City of Chicago* (1st Dist. 1975), 26 Ill. App. 3d 850, 326 N.E.2d 170.

In *Hennigs v. Centreville Township* (1973), 56 Ill. 2d 151, 306 N.E.2d 287, the Supreme Court ruled that governmental liability for failure to maintain streets in a reasonably safe condition must, under section 3—102, be extended for the first time to include townships. Under the statutory interpretation adopted in *Hennigs*, a city cannot claim immunity for dangerous defects in its streets, regardless of the liability of public officials obligated to maintain and repair city streets.

■■ Furthermore, according to testimony in the case at bar, defendant had placed gravel in the hole which caused plaintiff's injury, but the gravel repeatedly washed out when it rained. Under section 3—105, physical damage or deterioration of streets resulting from rain is a condition expressly excluded from immunity. We are therefore persuaded that defendant city is not immune from liability under section 3—102, and we hold that the trial court's rulings on the issue of governmental immunity were correct.

The second issue before us is whether the trial court erred in granting defendants a new trial on the issue of damages. According to the evidence presented at trial, when plaintiff struck the pot hole, he was thrown from his motorcycle and landed on his face and head. In addition to cuts, scratches and bruises, defendant suffered a painful brain concussion and was hospitalized six days. He was able to return to his work as a janitor after five weeks. Because of his continuing complaints of headaches, he was given two electroencephalogram tests, skull X-rays, and other tests, all of which failed to show any objective evidence of brain injury such as might cause headaches. His complaints of severe headaches continued to the date of trial (April 29, 1974) and treatment had consisted of taking aspirin. The medical testimony by the treating physician was somewhat

inconclusive. The doctor stated that the headaches could be related to the injury and could be a permanent condition, but on cross-examination, the doctor also said the headaches might be caused by tension over the pending lawsuit since plaintiff had said he was all worked up about the suit.

Plaintiff also testified to a 25-pound weight loss, an impairment of his senses of taste and of smell, and that he occasionally passes out. This testimony was corroborated by his sister. Medical bills totaled $428 and lost wages amounted to $750.

Plaintiff has been totally deaf since he was seven years of age, but apparently acquired considerable skill at lip reading after nine years of education at a special school in Jacksonville, Illinois. Several witnesses testified that plaintiff's ability to read lips has diminished noticeably since the accident, and that now he frequently fails to understand what is said to him. Plaintiff's doctor, however, had not observed any diminishment of his lip reading ability. While on the witness stand, plaintiff responded to most questions appropriately but at times appeared to misunderstand the question and at other times gave rambling unresponsive answers.

The jury awarded plaintiff $50,000 damages. In ordering a new trial on the issue of damages, the trial court stated only that "The size of the verdict returned by the jury was excessive."

■■ As we have previously stated, when a new trial is granted, a concise statement of findings or reasons should be incorporated into the record by the trial judge so that the reviewing court may know what prompted his action. (*Effler v. Metzger* (3d Dist. 1975), 29 Ill. App. 3d 55, 329 N.E.2d 327; accord, *Turner v. Commonwealth Edison Co.* (5th Dist. 1976), 35 Ill. App. 3d 331, 341 N.E.2d 488.) Here, the statement that the verdict is "excessive," without more, fails to enlighten either the litigants or the reviewing court as to the circumstances which were determined to require a new trial.

On appeal plaintiff contends that the grant of a new trial was improper because no errors were committed in the course of the trial and because the impairment of plaintiff's ability to lip read justified the $50,000 verdict. Plaintiff argues that the trial judge substituted his judgment for that of the jury and granted a new trial merely because he would have decided the case differently had he been the trier of fact, as was found to be the case in *Effler v. Metzger*, where we reversed the trial court's order of a new trial.

Defendant argues that the new trial order was justified by either of two reasons: (1) that the jury was unduly influenced by sympathy for plaintiff as a result of his demeanor, gestures and grimaces, or (2) that the evidence did not support a finding of $50,000 damages.

We have carefully examined the transcript of proceedings and find that defendants did not object to plaintiff's conduct. In an earlier case where the reviewing court reversed the trial court's order for a new trial which was based on the demeanor and tone of voice of witnesses and counsel, it was said:

"The evidence in the record supports the verdict, and the argument that the trial court for reasons or considerations that do not appear of record, has the authority to refuse a judgment on that verdict and to order a new trial, suggests, in our opinion, an unlimited and arbitrary power, not a judicial discretion. If an exercise of 'discretion' may be rested purely upon such matters not of record, as defendant suggests to be so, then such an order is not subject to review at all and is for that reason an arbitrary power * * * The record must, in our judgment, demonstrate a reasonable basis for an order granting a new trial, in the absence of which showing we feel required to regard such an order as error." *Dobson v. Rosencranz* (3d Dist. 1967), 81 Ill. App. 2d 439, 447, 226 N.E.2d 296.

The same rule would apply in the case at bar, and, if the trial court relied on conduct of plaintiff not shown in the record, the award of a new trial was improper.

■■ Defendant also points to certain parts of plaintiff's testimony as indicative of the problems confronting defendants during the trial. This testimony includes instances where plaintiff's answers were not related to the questions, several that included statements far beyond the scope of the question, and one or two statements that made little or no sense. In one case the court sustained an objection to hearsay, but no objections were made to the other testimony. Possible sympathy for plaintiff's deafness was discussed by counsel for both plaintiff and defendants in closing argument without objection. Thus we are unable to say that reversible error was committed during either the testimony or closing arguments. Certainly the conduct complained of was no more prejudicial than the emotional outbursts of the plaintiff in *Bauer v. Timucci* (1st Dist. 1975), 33 Ill. App. 3d 1051, 339 N.E.2d 434, where a grant of a new trial was reversed on appeal.

As has frequently been said, the determination of damages in personal injury cases is a matter peculiarly within the province of the jury since no mathematical computation of compensation is possible, and courts must keep in mind that the aim of the law is to attain a reasonable balance between the amount awarded as damages and the extent of the injuries. *LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1st Dist. 1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65.

■■ Although the verdict here may well be in excess of the amount which the judges of both this court and the trial court would have allowed if they had been the trier of fact, the issue presented by the post-trial motion is whether the verdict was against the manifest weight of the evidence. (*Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 311 N.E.2d 138; *Stringer v. McHugh* (5th Dist. 1975), 31 Ill. App. 3d 720, 334 N.E.2d 311; *Skaug v. Johnson* (2d Dist. 1975), 29 Ill. App. 3d 239, 330 N.E.2d 265.) The amount of damages is primarily a question of fact for jury determination and we will not disturb the result unless it is clear that all reasonable men would agree that the amount is excessive. *Schrage v. Allied Paper Corp.* (3d Dist. 1962), 34 Ill. App. 2d 9, 21, 180 N.E.2d 221; *Hulke v. International Manufacturing Co.* (2d Dist. 1957), 14 Ill. App. 2d 5, 47, 142 N.E.2d 717.

Unlike the recent case of *Bernardoni v. Johnson* (3d Dist. 1975), 28 Ill. App. 3d 726, 329 N.E.2d 33, we have no finding by the trial judge that the verdict is not supported by the evidence, or that it shocks the conscience of the court, or that it far exceeds a fair and reasonable compensation for plaintiff's injuries.

■■ ■ Where, as here, the evidence of permanent injury is contradictory and to some extent subjective, the court may not substitute its inferences and conclusions of fact for those drawn by the jury if those drawn by the jury are reasonably supported in the evidence. (*Dunlavey v. Patti* (3d Dist. 1967), 79 Ill. App. 2d 442, 223 N.E.2d 858.) It is particularly difficult to fix the precise dollar value of compensation where the award is based on pain or suffering. (*Bernardoni v. Johnson.*) The same is true of a permanent disability, and the fact that medical and hospital expenses may be small, and that plaintiff has returned to work, may be of no practical significance in determining damages. *Trowbridge v. Chicago & Illinois Midland Ry. Co.* (3d Dist. 1970), 131 Ill. App. 2d 707, 263 N.E.2d 619.

■■ The jury heard plaintiff's testimony describing his headaches, loss of appetite, occasions when he passed out, and vomiting. Much of this evidence was corroborated in whole or in part by other witnesses, who also testified to the diminishment of plaintiff's ability to read lips and the accompanying frustration and difficulties. Defendant called no witness to contradict plaintiff's evidence as to damages, and relies primarily upon the testimony of plaintiff's doctor concerning the absence of objective evidence of brain damage. We think reasonable persons, upon due consideration of the evidence pertaining to damages, might well differ in their views on the question whether the sum of $50,000 is in excess of an amount for fair and reasonable compensation for the injuries which plaintiff suffered; but we find nothing in the record which would justify a conclusion that the verdict indicates passion or prejudice or other

improper motive on the part of the jury. Consequently, we conclude that the trial court abused its discretion in granting a new trial.

We therefore reverse the order for a new trial, and remand with directions to enter judgment on the verdict.

Reversed and remanded with directions.

ALLOY, P. J., and STOUDER, J., concur.