HANS J. TEN EICKEN, Plaintiff-Appellant, *v.* LLOYD JOHNSON *et al.*, Defendants-Appellees.

(No. 54200;

First District—August 20, 1971.

John G. Phillips, of Chicago, (Ellis B. Rosenzweig, of Chicago, of counsel,) for appellant.

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen, Richard F. Friedman, Assistant Corporation Counsel, of counsel,) for appellees.

Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:

Plaintiff's amended complaint alleged that in December of 1963 he suffered personal injuries when his car fell into an unmarked rut on a Chicago public street, causing the car to strike a pillar beacon in the middle of the street. At the time, defendant Johnson was the Commissioner of Streets and Rogers was the Deputy Commissioner.[1] This appeal is from an order of the trial court which granted defendants' motion to strike the amended complaint and dismissed the cause of action.

Because of the date of the alleged tort in this case, plaintiff's argument will be better understood after a brief summary of the development of the law in the area of governmental immunity.

In 1959 the Illinois Supreme Court decided *Molitor v. Kaneland Community Unit District,* 18 Ill.2d 11, which ended tort immunity for school districts specifically and denounced generally the concept of governmental immunity which had existed in Illinois for decades. The opinion, at page 20, included the statement that "It is a basic concept underlying the whole law of torts today that liability follows negligence, and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment."

The General Assembly thereafter enacted numerous statutes to limit or immunize from liability various governmental units. In *Harvey v. Clyde Park Dist.,* 32 Ill.2d 60, the Supreme Court held one of these immunizing statutes unconstitutional on the basis that the distinctions drawn between governmental bodies for the purposes of the various statutes were irrational and arbitrary. See also *Hutchings v. Kraject,* 34 Ill.2d 379; and *Grasso v. Kucharski,* 93 Ill.App.2d 233, which applied the *Harvey* case to these statutes generally.

In 1965, the General Assembly enacted the Local Governmental and Governmental Employees Tort Immunity Act, Ill. Rev. Stat. 1965, ch. 85, par. 1—101, *et seq.* Section 2—201 of that Act reads as follows: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

Plaintiff's position is that this statute is inapplicable, having been enacted in 1965, while the alleged tort occurred in 1963, and the *Molitor*

---

[1] Johnson died during the course of these proceedings and his Executor, The Northern Trust Company, was substituted as party defendant. As background, this court was advised during oral argument that the defendants were personally sued in this case because of a failure of required notice as a condition to suit against the City of Chicago.

case was in full effect at that time, allowing recovery on common law principles of tort liability. Defendants recognize the applicability of common-law principles, and take the position that section 2—201 above is the statutory embodiment of what has been the prevailing common law relating to liability of public officials entirely apart from the question of governmental immunity. Defendants say that they are not liable, as the acts complained of relate to the exercise of discretion in the performance of their duties or policy-making functions.

The case relied on by plaintiff is *Kitto v. Wattleworth* (1960), 24 Ill.App.2d 484, 494, in which the Second District Appellate Court held that a County Superintendent of Highways and a Road Commissioner of a township could be held personally liable for negligently permitting a road to be in a dangerous condition. The court reached this conclusion on the authority of the opinion in the *Molitor* case, citing its broadest language to the effect that liability follows negligence.

In the later case of *Lusietto v. Kingan*, (1969), 107 Ill.App.2d 239, the facts of which are substantially the same as those in *Kitto* and in the case before us, the Third District Appellate Court held that the Maintenance Supervisor of certain State highways was personally immune from suit for injuries resulting when a car had struck a hole in the highway. The court said at page 244: "Quite apart from the doctrine of governmental immunity, the case law in this state has developed the doctrine of public officials' immunity. This doctrine is distinguished from and founded on a different rationale from the principle of governmental immunity * * *. In Nagle v. Wakey, supra, our Supreme Court held that the duty to keep highways in repair was a duty which required the exercise of judgment and discretion and that in performing this duty the commissioners were clothed with discretion as to the practicability of making improvements and as to the best methods to be employed, they were therefore protected by this theory of immunity. We believe that the defendant in the case now before us is entitled to that same immunity. Although the case of Molitor v. Kaneland Community Unit School Dist., * * * abolished the principle of governmental immunity, *it did not destroy the principle of public officials' immunity*." (Emphasis supplied.)

Further, at page 244, the court also pointed out as the rationale for this rule that public officials performing their duty in this situation must use their discretion as to which repairs to make, in what order, and all "within the limitations of available manpower, equipment and finances." Continuing, at page 246, the court outlined the difficulties that would be raised if a contrary rule were adopted: "To hold the defendant liable in this case would be productive of many problems. Who, in the chain of command concerning state highways would be responsible? As orders

filter down and reports filter up, would each individual in line be personally responsible? What if budget deficiencies due to insufficient legislative appropriations required a restriction in repair work so that only half the holes in the State's highways could be filled? Moreover, it is common knowledge that no highway is without imperfections. If every rut, hole, or blemish on the highway were to create the possibility of personal liability against one or more employees of the State Highway Department, it would be impossible to find employees willing to serve under such conditions." [2]

Specifically with regard to *Kitto, supra,* the court in *Lusietto,* at pages 245-46, found that case to be contrary to *Nagle v. Wakey,* 161 Ill. 387, thus failing to distinguish between governmental immunity and the immunity of public officials.

We agree with the *Lusietto* court that *Molitor* did not overrule *Nagle* on this point, and find the latter opinion of particular pertinence in outlining the character and extent of a public official's immunity. In *Nagle,* the suit was against a highway commissioner, personally, for the negligent maintenance of a bridge. The court, at page 393, noted that the commissioners "are clothed with the discretion as to the practicability of making improvements and as to the best methods to be employed." The court then set out the distinction between ministerial duties and discretionary ones, the latter giving rise to immunity: "Even if it is proper to call the act of repairing a highway or bridge ministerial, it is a duty which unquestionably involves the exercise of judgment and discretion as to time, method and means, and is readily distinguishable from such ministerial duty as merely involves the following of specific directions and instructions."

The court, at page 394, concluded: "We do not think that the commissioners, who in good faith and to the best of their ability have expended the means at their command where they seemed to them most needed, can be called upon to justify their judgment to the satisfaction of a jury at the peril of their savings." See also: David C. Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act,* 1966 Univ. of Ill. Law Forum, 981, 995, 1001.

Plaintiff also calls our attention to the case of *Blazer v. Highway Com'r of Marengo Township,* 93 Ill.App.2d 89, 96. There, the suit was against the "Highway Commissioner of Marengo Township" which the court

---

[2] In *Lusietto* the defendant was the maintenance supervisor over 240 miles of highways. We have been advised in the briefs that defendants in the instant case were charged with the maintenance of approximately 4,000 miles of streets in the City of Chicago.

recognized as a quasi-public corporation and held: "To the extent that there may be negligence, in some manner, in the carrying out of these duties by the officer, his agents or employees in the course of their employment, *the quasi-public corporation, the defendant, may be held liable therefore.*" (Emphasis supplied.)

The court noted, by way of dictum, that there may be some unspecified circumstances under which a public officer may be personally liable. That general observation by the court, however, cannot, in our opinion, be given the weight plaintiff would ascribe to it for the purpose of abrogating the common law immunity from liability for the discretionary acts of government officials. If it were to be so construed, we would find ourselves in agreement, rather, with *Lusietto, supra,* which is a specific decision squarely in point on the facts.[3]

We conclude, therefore, that during the interim between the *Molitor* decision and enactment of the 1965 governmental employees immunity statute, the common law governing the instant case continued to provide governmental officials with immunity from liability in their exercise of discretionary authority.

The judgment dismissing the cause of action is therefore affirmed.

Judgment affirmed.

DRUCKER and LORENZ, JJ., concur.

---

[3] *Lusietto* was decided a year after *Blazer* and nine years after *Kitto*. Since *Kitto* and *Lusietto* appear to be in direct conflict, we consider it to be of some interest, at least, that the Supreme Court denied leave to appeal in *Lusietto.* 41 Ill.2d 581.