FIRST NATIONAL BANK OF LAKE FOREST, Trustee, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE VILLAGE OF MUNDELEIN, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—87—0220

Opinion filed February 5, 1988.

Charles F. Marino, of Chicago, for appellant.

Peter N. Weil, of Donald T. Morrison & Associates, P.C., of Waukegan (Donald T. Morrison, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

This case involves the Mundelein Industrial Park (park), an industrial subdivision located in the Village of Mundelein, Lake County, Illinois. It lies south of Allanson Road, a paved, dedicated public road and consists of some industrial sites fronting on Tower Road, the main north-south street in the park. Within the park, there is also a small cul-de-sac called Turret Court. Most of the lots have been sold and are improved with a variety of industrial buildings. The park is divided into two sections, unit I, which was developed in the late 1960s and unit II, which was established in the mid-1970s.

Defendant, Village of Mundelein, appeals from a jury verdict which found that Tower Road and Turret Court (roads) are public roads. Plaintiff First National Bank of Lake Forest, trustee under trust No. 5142 (also known as the Park Allanson Trust), owns a number of lots in the park. Plaintiff Edward Jacks is one of the beneficiaries of said trust and has the power of direction regarding the same.

Plaintiffs filed a three-count complaint on March 29, 1985. Count I sought declaratory judgment that the roads are public and, therefore, owned by defendant. Count II sought damages of $150,000 for work done on the roads and its ancillary structures. Count III sought damages of $150,000 for lost sales of property in the Mundelein Industrial Park (park) and resulting carrying costs.

Defendant filed a counterclaim seeking money damages from plaintiffs to repair the roads.

A jury trial in this cause of action commenced on December 1, 1986. At the close of all the evidence, the court ruled as follows: (1) plaintiffs' motion for a directed verdict as to count I was denied, and therefore, the issue was submitted to this jury; (2) defendant's motion for a directed verdict as to count II was granted on the basis of governmental tort immunity; (3) defendant's motion for a directed verdict on count III was sustained on the ground of governmental tort immunity; and (4) plaintiffs' motion for a directed verdict on defendant's counterclaim seeking damages for the repair of the roads was granted. The jury found that the roads had been dedicated to the public, and the village appeals from that verdict and the judgment entered thereon. Plaintiffs cross-appeal from the trial court's decision to grant defendant's motion for a directed verdict on count III of the

amended complaint based on the defense of governmental tort immunity. Plaintiffs do not appeal the trial court's granting of defendant's motion for a directed verdict on count II of the amended complaint.

The original plat of subdivision of the part designated in the trial court as unit I was prepared in 1967 by Neil Lee, a surveyor working for Donald Englehardt, the owner at that time. After Tower Road was built, a number of lots in unit I were sold off by Englehardt. A few years later, in the early 1970s, Englehardt sold off the remaining lots, together with about 50 acres of vacant land to the south, and title was placed in plaintiffs' trust. Plaintiff Edward Jacks, who had power of direction over the trust, hired Frank Furlan, an engineer and surveyor, to lay out and design a plat of subdivision on the 50 acres commonly known as unit II. The only access unit II had to the system of public roads was over the road in unit I known as Tower Road.

After the infrastructure of unit II was completed in the mid-1970s, numerous lots were sold, and various industrial buildings were constructed through 1982. In 1982, a lawsuit was filed against defendant by Lynne Hight, who had fallen from her bicycle after riding over a crack in the pavement in that part of Tower Road in unit I. The issue of ownership of Tower Road then arose. On July 2, 1982, Mayor McCrae of Mundelein wrote Jacks a letter notifying him that the village was taking the position that the roads were private thoroughfares.

The primary issue of this case is whether or not the roads were dedicated through common law dedication to defendant, Village of Mundelein. The jury verdict held that the roads were dedicated public roads. Where conflicting evidence is presented to a jury, its verdict will not be disturbed on appeal unless its verdict is unreasonable, arbitrary, or not supported by the evidence. *Milwaukee Mutual Insurance Co. v. Wessels* (1983), 114 Ill. App. 3d 746.

■ Defendant argues that the evidence was insufficient to meet the elements required for a common law dedication. It is well established that the elements required for a common law dedication are: (1) donative intent; (2) the acceptance by the public; and (3) clear and unequivocal evidence of the first two stated elements. *Reiman v. Kale* (1980), 83 Ill. App. 3d 773.

■ Initially, defendant contends that the evidence does not clearly and unequivocally establish that plaintiffs intended to donate the land over and under the roads to defendant for public streets. Plaintiffs cite the following as evidence of the requisite donative intent.

Edward Jacks testified that he was one of the beneficiaries of the trust and was the person primarily responsible for the subdivision and development of unit II in the park. Jacks testified that he intended the roads to be dedicated public roads, that he never sent bills to lot owners for upkeep and maintenance of the roads, and that he never restricted access thereto or erected "private" signs thereon. Further, Jacks said he never told prospective purchasers that the roads were private.

Jacks also testified that he sold lots to the public and that he paid defendant substantial fees for plan review and construction inspection based upon the village engineer's estimates of costs for public improvement.

Next Neil Lee testified that he was a surveyor with over 20 years' experience and was presently employed with R. E. Allen & Associates. He stated that he had prepared the plat of subdivision for unit I in the park. He then said that it was the custom and practice of Lake County surveyors at the relevant time to draw the lot lines at the boundaries of the street if the street was to be dedicated to the public. He said that if the subdivider's intention was to make a private road, the lot lines normally extended to the center of the thoroughfare. Viewing the plat of subdivision for unit I, Lee noted that the lot lines stopped at the edge of Tower Road and that this showed it was to be dedicated to the public.

Frank Furlan, an engineer and registered land surveyor since 1953, stated that he practiced primarily in Lake County. Furlan testified that he had prepared the plat of subdivision for unit II of the park in 1974. He stated that prior to drawing up the preliminary plat, he contacted defendant to determine the subdivision regulations and met with the village engineer. Furlan then stated that he submitted a preliminary plat to defendant for its consideration, and the latter reviewed it and sent it back with no major changes. He said that he then prepared the engineering drawings for public improvements, *i.e.*, streets, water mains, and sanitary sewers, and submitted them to the defendant's engineer, who made a number of recommendations and revisions, most of which were followed by plaintiffs.

Furlan then testified that the plat of subdivision was shown to all village officials and that they approved of and signed the plat. He stated that the plat complied with the provisions of the defendant's subdivision ordinance. He said further that if the roads had been intended to be private, they would have been designed to different standards. He testified that a private road would have cost substantially less than the one which was actually built by plaintiffs. Regard-

ing the intention to dedicate a road, the following colloquy took place:

"Q. Now you have told us that when the subdivider does not intend to donate the land to the public he demonstrates that intent by running the lot lines to the center of the road, is that right?

A. Yes, sir.

Q. Conversely, Mr. Furlan, when it is his intention to dedicate to public use, in 1974, he [plaintiff Jacks] ran the lot line to the edge of the roadway, is that right?

A. The right-of-way of the road.

Q. To the right-of-way line of the road. And is that what was done in Mundelein Industrial Park Unit No. II?

A. Yes, sir.

Q. So that the running of lot lines to the edge of the roadway is a demonstration of intent to dedicate for public use, is that right?

A. Yes, sir."

Furlan then testified that in some Lake County plats in 1974, the phrase "hereby dedicated" would appear on plats of subdivision. He stated that either the village would request that the term "hereby dedicated" appear on the plats or that surveyors from Cook County who, as a rule, used the term "hereby dedicated" on their plats of subdivision prepared the plats.

Furlan testified that he met with the defendant's planning commission on July 17, 1974, to present final plans for unit II. He said that no member of the planning commission ever suggested that "hereby dedicated" be applied to Tower Road and that no member asked if the roads were private.

On cross-examination, Furlan testified that he had gone to the Lake County recorder's office and examined the plats filed in 1974, 1975, and 1976. He then testified that only about 1½% of the plats filed showed that streets were marked as dedicated to the public.

Defendant countered with the testimony of Robert Biderman, a Cook County surveyor with over 30 years' experience who had prepared a number of plats in Lake County. Biderman stated that it was his practice to designate public roads as "hereby dedicated" on a plat.

Defendant further asserts that plaintiffs produced no evidence that the developer of unit I, Donald Englehardt, intended to donate the land under Tower Road as a public street. Defendant also argues that plaintiffs did not produce any evidence that Englehardt paid defendant a plan review fee or a construction inspection fee on unit I.

Regarding whether or not defendant clearly and unequivocally ac-

cepted the roads, plaintiffs emphasize the following. In February 1972, Curtis Meland of Meland, Hanrath, & Associates sent a letter to Morris Noll, chairman of defendant's public works committee, requesting that unit I of the park be accepted by the village and that acceptance go back to about December 1968 or January 1969. After some required projects were completed, the village board authorized the mayor to sign an acceptance of the park. At that time no reference was made to Tower Road or the acceptance of Tower Road. No similar action was requested or taken by the village board following the subdivision of unit II of the park in 1974, after which time Tower Road was extended and Turret Court was provided.

Called by plaintiffs as an adverse witness, Mundelein village administrator Kenneth Marabella testified that the village: (1) has always plowed snow on the roads; (2) has provided police and fire protection to the park's industries without extra charge; (3) has removed debris from Tower Road; (4) has cut grass and weeds in the median of Tower Road; (5) has periodically inspected the roads; (6) has denied a real estate broker permission to place a sign in the Tower Road parkway; (7) has never restricted access to the roads; (8) has approved the water main and sanitary sewer in unit II; (9) has allowed the hookup of the water main and sanitary sewer to the village water main and sanitary sewer; (10) has prepared a street resurfacing plan including the roads which contemplated the use of State motor tax fuel funds; (11) has never received real estate taxes on the property under the roads; (12) has replaced stolen manhole covers on Tower Road; (13) has removed a dead tree from Tower Road; (14) has made repairs on the roads; (15) has issued building permits for all buildings on Tower Road; (16) has placed a street sign at the entrance to the park; and (17) has included Tower Road in the village maps.

The defendant argues that the evidence does not show clearly and unequivocally that it accepted plaintiffs' alleged donation of the roads. In essence, it contends the points made by plaintiffs, taken individually, do not constitute acceptance of the roads. For example, defendant admits that the village board approved three plats of subdivision for the park and authorized them, but it then cites a number of cases that hold approval of a plat of subdivision by a village board does not constitute acceptance of the streets shown thereon. (*Water Products Co. v. Gabel* (1983), 120 Ill. App. 3d 668; *Nimpfer v. Village of Fox Lake* (1929), 334 Ill. 46.) If this were the only evidence presented by plaintiffs, the jury would have apparently had little trouble in deciding for defendant.

It is evident to us that the jury took into account the totality of

the evidence presented at trial to reach its decision. The jury's verdict finds ample support in this record that clearly and unequivocally the plaintiffs intended to donate the roads to defendant, which in turn accepted the donation. Particularly persuasive is the testimony of Frank Furlan regarding plaintiffs' intent to dedicate the roads. Also, the litany of the facts stated by defendant's village manager, which indicates defendant's acceptance of the roads, clearly outweighs defendant's contrary evidence.

■ On cross-appeal, plaintiffs argue that the trial court erred in denying its motion to strike the affirmative defense based on the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1985, ch. 85, par. 2—103 *et seq.*). Further, plaintiff asserts that if this court allows defendant to assert the immunity defense, then the trial court erred in granting defendant's motion for directed verdict on count III.

One week prior to the trial of this cause, plaintiffs sent defendant an amended complaint which raised no new issues. On the first day of the trial, defendant filed an answer to the amended complaint, raising for the first time the Act as an affirmative defense to counts II and III of the amended complaint.

Plaintiff argues that section 2—613(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d)) should control here. The pertinent language reads:

> "The facts constituting any affirmative defense, *** which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." (Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d).)

Plaintiffs term this the raising of a *new affirmative defense* and as such constitutes the type of "surprise" contemplated by section 2—613. Plaintiffs contend that they did not have time to research the issue and prepare an adequate response, nor did they have time to formulate proofs to such a defense.

Defendant counters this by asserting that the governmental tort immunity defense is not an affirmative defense. It refers to section 2—613(d), which lists as affirmative defenses: "payment, release, satisfaction, discharge, license, fraud, duress, estoppel, laches, statute of frauds, illegality, *** that an instrument or transaction is either void or voidable in point of law, or cannot be recovered upon by reason of any statute or by reason of nondelivery, want or failure of consideration in whole or in part, and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, counterclaim, or third-party complaint, in

whole or in part, and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise." (Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d).) Defendant argues that the governmental tort immunity defense is not specifically listed in section 2—613(d) or covered in the general language of the section.

Defendant further contends that the defense is inherent in every case involving potentially tortious conduct by a governmental body and cites the case of *U-Haul Co. v. Town of Cicero* (1980), 87 Ill. App. 3d 915, as dispositive in the matter. In *Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 970, this court held that statutory governmental immunity under the Act is an affirmative defense. (See also *Hansen v. Raleigh* (1945), 391 Ill. 536 (benefits of the former Fireman's Immunity Act (1931 Ill. Laws at 618) must be invoked as an affirmative defense under section 43(4)).) We find the weight of authority supports plaintiffs' contention that the governmental tort immunity defense is an affirmative defense that must be pleaded in timely fashion. Also, the fact that defendant pleaded the governmental tort immunity in answer to plaintiffs' amended complaint undercuts its contention as to the *inherent* nature of the defense.

■ Under section 2—613(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d)), if the defendant seeks to assert an affirmative defense at trial, he must specifically plead it so the plaintiff is not taken by surprise. If defendant fails to do so, it is deemed to have waived the defense. The defense cannot be considered, even if the evidence suggests its existence. *Spagat v. Schak* (1985), 130 Ill. App. 3d 130.

The facts regarding this issue are as follows. Plaintiffs filed their complaint on March 29, 1985. Defendant's answer, which did not contain an affirmative defense based on governmental tort immunity, was filed on May 6, 1985. Plaintiffs filed a motion for summary judgment on January 23, 1986. The motion was fully briefed and argued by both parties. Apparently, at no time during the disposition of the motion for summary judgment did defendant assert the defense of governmental tort immunity.

Plaintiffs filed an amended complaint for declaratory judgment on December 1, 1986, the date on which the trial of this cause of action began. On the same date, defendant filed an answer to the amended complaint and for the first time pleaded, in its answer to counts II and III, the defense of governmental tort immunity.

Plaintiffs argue that the raising of this affirmative defense at the

beginning of the trial and under the above-stated circumstances constitutes the kind of surprise that section 2—613(d) was designed to prevent. Defendant had ample opportunity to assert this defense in either the pleadings or during the disposition of plaintiffs' motion for summary judgment.

Finally, assuming that the affirmative defense had been raised at the proper time, plaintiffs argue that the trial court erred in granting defendant's motion for a directed verdict on count III of the amended complaint. Plaintiffs contend that the defense of governmental tort immunity does not apply to the facts of this case and claim that it sounds more in contract than in tort.

Plaintiffs initially note that section 2—101 of the Act states in pertinent part:

> "Nothing in this act affects the liability, if any, of a local public entity or public employee, based on:
>
> (a) Contract ***." (Ill. Rev. Stat. 1985, ch. 85, par. 2—101.)

Plaintiffs assert that they pleaded their cause of action in terms of common law dedication. In count I, plaintiffs alleged that they intended to dedicate Tower Road and put forth various facts which indicate said intent. Plaintiffs then alleged acceptance by defendant of the donation and set forth various facts which demonstrate said acceptance. Count III prayed for actual damages which plaintiffs had allegedly incurred as a direct result of defendant's failure to acknowledge acceptance of the dedication of the roads. Plaintiffs assert that since July 1982, when defendant initially denied the dedication of Tower Road, plaintiffs have been unable to sell their lots and incurred interest and carrying charges. Plaintiffs conclude that these damages are in the nature of contract damages not general tort damages.

In support of their argument that their action more closely resembles an action for breach of contract, plaintiffs cite the following:

> "[B]y analogy with the rule prevailing in contract law, acceptance of an offer of dedication is necessary to make the dedication complete, because a dedication consists of an offer and an acceptance." E. McQuillin, *Municipal Corporations* §33.43, at 737 (3d ed. 1983).

Defendant's counsel at one point during the trial appeared to endorse this viewpoint when he stated as follows:

> "Now, before a village can accept a dedication there must be an intent on the part of the property owner to donate it to them. It's very similar to a contract. Before I can accept the contract, there must be an offer made. If I accept something that hasn't been offered to me, we don't have a contract. We

don't have anything. And likewise here, unless there has been an intent to donate established by [previous owner] Englehardt, then there is nothing for the Village to accept."

Defendant argues that there is more to a contract than offer and acceptance, namely, consideration. The village maintains that there is no consideration for this alleged contract and, therefore, no contract. Rather, the donation constitutes a gift. Also, defendant states that plaintiffs did not specifically allege a breach of contract in their amended complaint.

Defendant asserts that the village has immunity from two sources: (1) its action in recognizing or not recognizing a common law dedication is a governmental function for which it cannot be held liable for damages; and (2) it enjoys a statutory immunity under the Act.

To support its contention regarding the first source of immunity, defendant cites *Skyrise Apartments, Inc. v. City of Rockford* (1980), 83 Ill. App. 3d 447. In *Skyrise Apartments*, the city was sued for failing to pick up refuse from buildings with five or more apartments. The city's ordinance required garbage pickup from all residential apartment buildings. The court ruled that the ordinance did not create any contractual rights in plaintiffs. The court also found that collection of refuse is a governmental function rather than a proprietary one, and the city's failure to perform it is not the basis for an action in damages.

It is well established that the maintenance of roads is a governmental function. (*People ex rel. Hoagland v. Streeper* (1957), 12 Ill. 2d 204.) As such, the failure to perform this task is not a basis for an action in damages. (*Skyrise Apartments*, 83 Ill. App. 3d at 449.) Thus, plaintiff cannot prevail against defendant for damages arising out of an alleged failure to maintain the roads in question. We note that the trial court used both the Act and the governmental function defense as separate bases for its decision. Because of our decision, we do not need to address the issue of whether the Local Governmental and Governmental Employees Tort Immunity Act applies in this case.

Accordingly, we affirm both the jury's verdict that Tower Road and Turret Court are public roads and the trial court's decision to grant defendant's motion for a directed verdict on count III.

Affirmed.

HOPF and DUNN, JJ., concur.