**WARNER/ELEKTRA/ATLANTIC CORPORATION; Warner Communications Inc.; and Fireman's Fund Insurance Co., As Subrogee for Warner/Elektra/Atlantic Corporation and Warner Communications Inc., Plaintiffs,**

v.

**COUNTY OF DuPAGE, ILLINOIS, Defendant.**

No. 83 C 8230.

United States District Court, N.D. Illinois, E.D.

March 25, 1991.

Thomas J. Skeffington, Kevin P. Caraher, Clausen Miller Gorman Caffrey & Witous, P.C., Chicago, Ill., for plaintiffs.

Byron D. Knight, Charles C. Hoppe, Jr., Mark V. Puccio, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Pending before the Court is the motion of defendant County of DuPage ("DuPage") for a directed verdict. For the reasons set forth below, the Court denies the motion.

### II. ANALYSIS

Because this is a diversity case, the Court must look to Illinois law for guidance on the defendant's motion for directed verdict. *See Consolidated Bearings Co. v. Ehret–Krohn Corp.*, 913 F.2d 1224, 1227 (7th Cir.1990). The Illinois standard for such verdicts is set forth in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1967), where the Illinois Supreme Court remarked:

> [V]erdicts ought to be directed ... only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

*See Consolidated Bearings*, 913 F.2d at 1224; *Schultz v. American Airlines, Inc.*, 901 F.2d 621, 623 (7th Cir.1990). Having heard the evidence presented in plaintiffs' case, the Court cannot conclude that the evidence so overwhelmingly favors defendant that a verdict in plaintiffs' favor could not stand.

#### A. *Inverse Condemnation Claim*

■ DuPage initially argues that it is entitled to a directed verdict on plaintiffs' claim for inverse condemnation because plaintiffs have established that the Warner property was flooded on only two occasions. This argument is premised upon a line of cases which holds that real property cannot be deemed "taken" unless the property is flooded frequently or continuously. *See, e.g., Starcevich v. City of Farmington*, 110 Ill.App.3d 1074, 443 N.E.2d 737, 741, 66 Ill.Dec. 811, 815 (3d Dist.1982) (complaint failed to state a cause of action for taking because alleged injuries complained

of were not sufficiently frequent or permanent in nature). However, DuPage's argument misses the point in two respects. First, the Illinois constitution protects property owners from uncompensated taking *or* damaging. *See Department of Transportation of the State of Illinois v. Rasmussen*, 108 Ill.App.3d 615, 439 N.E.2d 48, 54, 64 Ill.Dec. 119, 125 (2d Dist.1982). This Court has previously ruled that the infrequency of the flooding at issue in this case precludes a claim for taking, but leaves room for a claim of damaging. (Memorandum Opinion and Order of June 23, 1986 at 4.) Although, as DuPage argues, there are some eminent domain and inverse condemnation cases in which the finding of damage was based upon acts or events of a permanent nature, *see, e.g., Rasmussen*, 439 N.E.2d at 54–55, 64 Ill.Dec. at 125–26 (recognizing damage claim for impairment of access to property resulting from construction of highway overpass), a claim for damage may also stand upon acts or events which are transient. DuPage not only overlooks the distinction between taking and damage but the differing effects which flooding has upon real and personal property. Real property can only be deemed "taken" by flooding which occurs on a frequent or continuous basis, because isolated or intermittent flooding does not deprive its owner of the use and enjoyment of the property. When the property is personal, however, one flood may be more than sufficient to cause permanent damage or destruction. Thus, cases from other jurisdictions have recognized inverse condemnation claims for injury to personal property which arose from infrequent flooding. *See Hawkins v. City of La Grande*, 102 Or. App. 502, 795 P.2d 556, 558–59, *review allowed*, 310 Or. 547, 800 P.2d 789 (1990) (rejecting contention that single incident of flooding can never result in compensable taking; although temporary flooding of plaintiffs' property did not support an inverse condemnation for taking of plaintiffs' land, it did support such a claim for the taking of plaintiffs' personal property destroyed in the flooding); *Skeen v. State*, 550 S.W.2d 713 (Tex.Civ.App.1977) (finding owner entitled to judgment on inverse condemnation for water damage to real and

personal property which resulted when her land was flooded on two occasions due to elevation of nearby highway and design of adjacent culverts and service roads). Plaintiffs, through the testimony of Warner employees Al Abrams, C. Robert Mascari and Larry Stanley, have presented ample evidence that the flood damage which occurred to the albums, cassette tapes, and other items stored in the Warner warehouse in July and August, 1982 was irreparable. Such evidence suffices to permit plaintiffs' inverse condemnation claim to reach the jury.

■ DuPage briefly suggests two concerns which purportedly counsel against the recognition of inverse condemnation claims in cases like this one: (1) that there is apparently no Illinois decision explicitly recognizing an inverse condemnation claim for injuries to personal property; and (2) that recognition of such a claim would open the floodgates to similar claims in other cases. However, DuPage has cited no case from any jurisdiction which rejects inverse condemnation claims based upon damage to personal property, nor has it marshalled any argument contrary to the many cases from other jurisdictions which have recognized such claims. *See* Memorandum Opinion and Order of March 4, 1991 (denying DuPage's motion for judgment on the pleadings as to Count II of plaintiffs' third amended complaint) at 3–4, 1991 WL 32775.[1] The mere fact that Illinois has not yet expressly acknowledged this species of inverse condemnation claims does not suggest a reluctance to do so, nor does it supply a valid basis for this Court to dismiss the claim, as DuPage would apparently have the Court do.[2]

DuPage's concern that the recognition of inverse condemnation claims for the loss of personal property will burden local governments with a new and expansive breed of liability is unfounded. Other jurisdictions have accepted such claims without evident fiscal calamity. Moreover, DuPage's suggestion that recognition of such claims will subject local governments to claims for injuries to personal property in all types of circumstances—automobile accidents involving governmental employees, for example (*see* Motion for Directed Verdict at 6)—is unfounded. DuPage ignores the fact that the particular proof required by an inverse condemnation—the taking or damaging of property proximately caused by a public improvement—limits such claims to a relatively narrow range of circumstances.

B. *Duty to Undertake a Drainage Analysis*

■ DuPage contends that it cannot be held to any duty to undertake a drainage analysis insofar as such analysis would have affected the modifications which it made in 1978 to Thorndale Road and the culvert below and which, according to plaintiffs, was a proximate cause of the flooding which gave rise to this litigation. This dispute has arisen in the context of the "issues" jury instruction plaintiffs have

---

1. In its March 4 opinion, the Court quoted languages from *Illinois Cities Water Co. v. City of Mount Vernon*, 11 Ill.2d 547, 550, 144 N.E.2d 729, 731 (1957), to the effect that compensable taking implicates personal as well as real property. *See* Memorandum Opinion and Order of March 4, 1991 (denying DuPage's motion for judgment on the pleadings as to Count II of plaintiffs' third amended complaint) at 4. DuPage now attempts to distinguish that case on the ground that the taking of a public utility at issue in that case was one authorized by a particular state statute which has no application here. However, the portion of the opinion relied upon by this Court rests not upon that statute, but the general power of eminent domain, and nothing in the text of opinion limits its application to the public utility setting.

DuPage also contends that language in an eminent domain case such as *Illinois Cities* has no bearing upon an inverse condemnation case.

That contention is inaccurate. *See* Memorandum Opinion and Order of March 4, 1991 at 4–5 and cases cited therein.

2. In its brief, DuPage asserts:

Thus, as a preliminary matter, this court would be making new Illinois law if it were to hold that an *inverse* condemnation claim can encompass personal property. It is not the province of this court, sitting in diversity, to make new law for Illinois. It is the province of this court to follow Illinois law, and since Illinois law has not recognized the cause of action in question, the defendant respectfully contends that it would be improper for this court to do so.

(Motion for Directed Verdict at 5.) This argument ignores the fact that federal courts sitting in diversity are routinely called upon to interpret state law and to resolve questions which the state courts have not yet resolved themselves.

modeled after Illinois Pattern Jury Instruction (Civil) No. 20.01. There, plaintiffs contended that DuPage was negligent in the design and construction of the widened roadway and extension and modification of the culvert because, *inter alia*, DuPage failed to undertake a drainage analysis to assess the impact of the changes it made. *See* Plaintiff's Proposed Jury Instruction No. 39, ¶ (g); Defendant's Revised Proposed Jury Instruction No. 13 at 1, ¶ (d). DuPage contends that such a contention is improper in light of the well-established principle that Illinois municipalities have no duty to undertake public improvements. *See, e.g., City of Freeport v. Isbell*, 83 Ill. 440, 442 (1876). However, as DuPage itself acknowledges, once a municipality undertakes to construct or modify a public improvement such as Thorndale Road or the culvert beneath it, the municipality has a duty to ensure that the improvement is reasonably safe. *See* County of DuPage's Memorandum of Law in Support of the County's Objection to Paragraph D of Revised Jury Instruction Number 39 at 1–2. *See also Resnik v. Michaels*, 52 Ill.App.2d 107, 110, 201 N.E.2d 769, 770 (1st Dist. 1964) ("A municipality is responsible for the negligent construction of public works and for its failure to maintain them, but it is not obligated, and is not liable for its neglect or refusal, to undertake such projects."); *accord Ross v. City of Chicago*, 168 Ill.App.3d 83, 522 N.E.2d 215, 218, 118 Ill.Dec. 760, 763 (1st Dist.1988). Given the evidence presented in this case, DuPage's concern is not well founded.

Plaintiffs' contention is not that DuPage was bound in the abstract to undertake a drainage analysis and ascertain what actions were required to improve the drainage conditions of the watershed feeding into the Thorndale Road culvert. Rather,

plaintiffs argue that in raising the roadway and extending and modifying the culvert, DuPage failed to consider (by means of a drainage analysis) what impact the changes might have upon the existing drainage conditions in the area, and that the modifications which the County made rendered the culvert unsafe. This argument is supported by testimony from plaintiffs' expert witness, Robert Gudmundson, to the effect that the flow capacity of the culvert was diminished by the addition of 90–degree bends and that the elevation of flood water waiting to pass through the culvert was increased by the elevation of the roadway.[3] The jury, of course, must decide whether the improvements which DuPage undertook in 1978 were effectively "unsafe." However, plaintiffs' contention that they were, and that consequently DuPage is liable in negligence, is contrary neither to the law nor to the evidence presented in plaintiffs' case. The Court has modified the jury instruction regarding the issues in the case to delete allegations which might have suggested a duty on the part of DuPage to take affirmative action separate and apart from the improvements it had undertaken to make to Thorndale Road and the underlying culvert. DuPage's concerns in this regard have therefore been allayed.[4]

## C. *Proximate Cause*

DuPage argues that there is a lack of evidence suggesting that the 1978 modifications to Thorndale Road and the culvert were a proximate cause of the flooding of the Warner property. That contention holds no merit. Gudmundson testified repeatedly that based upon his study of the conditions in the area and upon data for a 30–year rainfall, the post–1978 elevation of

---

3. Defendant's expert, John Morris, testified similarly.

4. Paragraph (d) at page 1 of Defendant's Revised Proposed Jury Instruction No. 13—which sets forth one of the ways in which plaintiffs contend DuPage was negligent—has now been modified to read:

The County of DuPage failed to exercise reasonable engineering judgment when it designed and constructed an extension and modification to the culvert under Thorndale Road and increased the height of the road, in that it failed to ascertain what effects these

changes might have upon drainage and to implement these changes in a manner which would not interfere with drainage.

Both parties have indicated to the Court that they "can live with" this instruction. Moreover, in discussions regarding an earlier version of this paragraph which specifically cited DuPage's failure to undertake a drainage analysis, counsel for DuPage indicated that although they objected to such a contention within the body of the jury instruction, the failure to undertake a drainage analysis was something plaintiffs might properly argue to the jury.

the roadway and configuration of the culvert caused the flooding.[5] Nonetheless, DuPage suggests that the requisite evidence of proximate cause is absent because such testimony is based, to a certain degree, upon suppositions as to what occurred on the events in question. This argument ignores the fact that findings of negligence are often based upon post facto recreations of events which necessarily rely to some extent upon theories and assumptions as to what likely occurred, as opposed to definitive proof of what actually occurred. The only limitation upon evidence in this regard is that expert opinion upon causation must be expressed to a reasonable degree of scientific certainty. *See* Memorandum Opinion and Order of February 17, 1991 at 25, citing, *inter alia, Rodrian v. Seiber,* 194 Ill.App.3d 504, 507, 551 N.E.2d 772, 773–74, 141 Ill.Dec. 585, 586–87 (5th Dist.1990) (although an "expert may not state a judgment or opinion based on conjecture," "an expert opinion couched in terms of probabilities or possibilities based upon certain assumed facts is not improper or inadmissible"). DuPage does not argue that the expert testimony offered in this case fails to meet this criterion. To the contrary, both of the experts who testified on behalf of the parties indicated without reservation that they were able to offer their opinions to a reasonable degree of engineering certainty based upon the data available to them. Accordingly, there is nothing fatally deficient the proof of negligence which plaintiffs have tendered.

### D. *Statutory Immunity*

■ DuPage argues that its course of conduct with respect to its 1978 work upon Thorndale Road and the culvert is cloaked with immunity pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat. ch. 85, §§ 2–103, 3–102(a), 3–103 (1981) (the "Act").[6] As this Court noted in its June 27, 1989 opinion denying DuPage's motion for summary judgment, under the version of the Act in effect at the time of the events underlying this case, a local government waived its immunities and defenses under the Act by purchasing liability insurance as DuPage had. *See* Memorandum Opinion and Order of June 27, 1989 at 8, 1989 WL 75184; *see also* Ill.Rev.Stat., ch. 85, ¶ 9–103(c) (1981).[7] Nonetheless, DuPage argues that to the extent it maintained a self-insured retention for liability below a certain amount, it does not waive the immunity defenses otherwise available under the Act. As set forth below, the Court deems that argument to have been waived. Alternatively, the Court concludes that such defenses would not require a directed verdict in DuPage's favor, because the premises for liability in this case are not

---

**5.** One of the criticisms Gudmundson expressed as to the reconfigured culvert was that the 90–degree bends which DuPage added were prone to the collection of debris, which would restrict the flow of water through the culvert and thus cause water to back up behind the culvert. Various witnesses in this case have testified to the sighting of debris in or near the culvert before and after the flooding, but none have recounted such sightings during the flooding. Moreover, Bensenville engineer John Wentworth testified that he had previously called upon DuPage in 1981 to clear a logjam of debris which had lodged in the culvert. Of course, it is for the jury to decide what inferences to draw from the sightings of debris before and after the flooding. *See United States v. Montoya,* 891 F.2d 1273, 1289 (7th Cir.1989). Notably, however, Gudmundson's calculation of the impact of the modifications to the roadway and culvert assumed there was no debris in the culvert. Thus, his opinion that these modifications were a proximate cause of the flooding does not depend upon definitive proof that debris was in fact lodged in the culvert at the time of the floods.

The Court notes that DuPage's own expert, John Morris, testified that the configuration of the culvert contributed to the flooding, although not significantly in his opinion. Morris' testimony was not presented in plaintiffs' case-in-chief, of course; nonetheless, it tends to confirm that plaintiffs' theory of the case is not without an evidentiary foundation.

**6.** The Court has cited the 1981 version of Ill. Rev.Stat. as that was the version in effect at the time of the flooding in 1982.

**7.** The Act has since been amended to provide that insurance company providing coverage to local governments shall assert the defenses and immunities which otherwise would have been available to the governmental entity under the Act. *See* Ill.Rev.Stat., ch. 85, ¶ 9–103 (1989); *see also Jastram v. Lake Villa School Dist. 41,* 192 Ill.App.3d 599, 549 N.E.2d 9, 13, 139 Ill.Dec. 686, 690 (2d Dist.1989).

contrary to the provisions of the Act upon which DuPage relies.

### 1. *Waiver of Statutory Immunity via Purchase of Insurance*

DuPage correctly argues that any waiver of immunity under the former version of ¶ 9–103(c) is co-extensive only with the amount of its insurance coverage; in other words, to the extent a local government is self-insured, it has not waived its statutory immunity from an award of damages. As the Illinois Supreme Court explained in *Antiporek v. Village of Hillside*, 114 Ill.2d 246, 499 N.E.2d 1307, 1308, 102 Ill.Dec. 294, 295 (1986):

> Tort immunity is intended to protect governmental funds, assuring that they will be directed and used for governmental purposes. If, however, the municipality decides to protect individuals against its negligent conduct by acquiring commercial insurance, the immunity is waived since government funds are no longer in jeopardy and immunity would inure to the benefit of private investors who have assumed the risk of insurers. Conversely, when a municipality self-insurers [sic], it bears all risks itself, and settlements or awards are paid directly from government coffers. Section 9–103(c) does not come into play in such circumstances because there is no concern that private investors, paid to assume certain risks, will attempt to assert immunities and shirk responsibilities they have assumed.

(Citations omitted.) This same principle applies when a local government has obtained commercial insurance for liability beyond a certain amount, but is self-insured for liability below that amount. *See Carr v. City of Chicago*, 630 F.Supp. 932, 936 (N.D.Ill. 1986) (Shadur, J.) ("§ 9–103(c) provides for the insurer's waiver only 'within the limits of said policy....' Illinois courts construe the scope of the waiver coextensively with the type and amount of damages the insurance policy covers."); *Beckus v. Chicago Board of Education*, 78 Ill.App.3d 558, 397 N.E.2d 175, 33 Ill.Dec. 842 (1st Dist.1979) (where defendant was insured for liability in excess of $1 million and maintained a self-insurance retention for liability up to that amount, defendant had not waived its statutory immunity from liability below $1 million); *Collins v. School District No. 189, St. Clair County*, 115 Ill.App.3d 100, 450 N.E.2d 387, 389, 70 Ill.Dec. 914, 916 (5th Dist.1983) (where insurance policy excluded liability for punitive damages, defendant had not waived liability as to claims for such damages in purchasing the insurance). DuPage represents without contradiction from plaintiffs that it maintained a self-insured retention of $100,000 for each event within the scope of its insurance policy, or a total of $200,000 for the two flood events at issue in this case. Thus, DuPage contends that its statutory immunity remains intact up to the amount of $200,000. For two reasons, this argument fails.

First, although this case has been pending for nearly eight years, DuPage has not raised this argument until now. The issue was not raised in DuPage's motion for summary judgment (indeed, as the Court noted in denying that motion, DuPage did not rely upon the provisions of the Act at all, *see* Memorandum Opinion and Order of June 27, 1989 at 8); it was not raised in DuPage's trial memorandum, nor was it raised in the pretrial order. Plainly this was not an argument the merits of which depended upon the evidence which plaintiffs would produce at trial; consequently, there is no excuse for the failure to assert this argument at an earlier date. Indeed, shortly before trial, plaintiffs moved to strike the statutory immunity defenses which DuPage had belatedly included it its affirmative defenses. When DuPage appeared in court upon the motion on November 13, 1990, the Court inquired of DuPage's counsel how it intended to proceed upon these defenses and expressed the concern that such defenses might raise legal issues which should be resolved in advance of trial. In response, DuPage's counsel made no mention of the argument it raises now. Subsequently, in its decision denying the motion to strike the affirmative defenses, the Court observed:

The Court does have some concerns as to what, if anything, DuPage plans to make of the immunity defenses. DuPage has not filed any dispositive motion based upon these defenses, and the date for such motions has long since passed. Moreover, the Court has previously noted in dictum in this litigation that the assertion of immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act is barred where, as here, the governmental entity has purchased liability insurance. *See* Memorandum Opinion and Order of June 27, 1989 at 7–8. Thus, it is not at all clear why DuPage has invoked this act. *DuPage should, of course, be fully prepared to address the relevance of its statutory immunity defenses and the manner in which they must be addressed in the forthcoming pretrial order.* Should the Court subsequently ascertain that these defenses require pretrial motions which DuPage has not filed or that the resuscitation of these defenses in response to the second amended complaint poses undue burdens which have not been called to the Court's attention, the court may reconsider this ruling and determine that DuPage has indeed waived these defenses.

(Memorandum Opinion and Order of December 14, 1990 at 5–6, 1990 WL 251896; footnote omitted, emphasis added.) DuPage offers no excuse for its failure to raise this argument until now, and in light of the Court's explicit instruction to address the implications of the immunity defenses in the pretrial materials, there can be none. The Court went to great lengths to ensure that the plethora of legal issues raised by the parties were briefed, argued, considered, and resolved prior to trial.[8] Repeatedly the Court admonished the parties that it did not want issues which could

have been foreseen earlier asserted for the first time in the midst of trial.[9] A fair trial demands that both the parties and the Court have the opportunity to address questions of liability in a timely and complete manner; toward that end, the parties must honor the deadlines imposed for raising the kind of argument DuPage now makes in support of its request for a directed verdict. DuPage has had every opportunity to raise the question of self-insurance; at this late date, it has foregone that opportunity. Consequently, any immunity defenses under the Act which might have been asserted to the extent of DuPage's self-insured retention have been waived.

### 2. Merits of the Statutory Immunity Defenses

■ Even if the Court were to assume that DuPage enjoyed any immunity under the Act, such immunity would not compel a directed verdict under any of the sections of the Act which DuPage has cited.

#### a. § 3–103(a)

Section 3–103(a) of the Act provides:

A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however if after the execution of such plan or design it appears from its use that it has created a condition that is not reasonably safe.

---

8. Indeed, just to make sure that there were no lingering questions posed by DuPage's immunity defenses—which DuPage had referenced generally in its trial memorandum—the Court inquired of counsel during a pretrial status hearing on February 27, 1991 whether they agreed that the Court's Memorandum Opinion and Order of June 27, 1989 disposed of these defenses. Counsel for both parties agreed that it did.

9. For example, in the course of a telephonic pretrial status hearing on February 25, 1991, during which the Court and the parties reviewed issues which had been raised in the parties' trial memoranda, the Court made it clear that if there were legal questions which could be disposed of in advance of trial, they would be.

Ill.Rev.Stat., ch. 85, ¶ 3–103(a) (1981). Du-Page argues that because the design of the improvements to Thorndale Road and the underlying culvert involved the exercise of judgment on the part of DuPage engineers and other employees, DuPage is immune from liability for injuries resulting from that design. However, by the express terms of the final sentence of this section, this immunity does not extend to designs which result in an unsafe condition. Both the allegations of plaintiffs' complaint and the evidence plaintiffs have produced at trial reveal that it is plaintiffs' contention that the design which DuPage adopted for the 1978 improvements interfered with the drainage in the watershed within which the Warner property is located and caused the property to flood. Accordingly, § 3–103(a) does not bar plaintiffs' negligence claim.

b. § 3–102(a)

■ Section 3–102(a) of the Act provides: Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition.

Ill.Rev.Stat., ch. 85, ¶ 3–102 (1981). Du-Page asserts that plaintiffs have presented no evidence tending to show that DuPage had actual or constructive notice of any problem in the design of the culvert or Thorndale Road prior to the flooding of the Warner warehouse in 1982. The Court disagrees.

As DuPage itself points out (Motion for Directed Verdict at 12), the Village of Bensenville's engineer, John Wentworth, noti-fied DuPage employee Glen Matz in 1981 that a blockage of sticks had accumulated in the culvert and that Matz subsequently removed the blockage. Such evidence tends to show that DuPage, through its employee, had notice of a problem which both Matz and Gudmundson believed was one potentially enhanced by the bends in the culvert which were installed by DuPage in 1978.[10]

In addition, as plaintiffs point out, Wentworth testified that he and Matz had discussed alternative means of eliminating the bends in the culvert. Wentworth also testified that he had sent a letter to Matz proposing a second, 36-inch culvert adjacent to the existing culvert under Thorndale. Several other witnesses testified to ongoing discussions between Bensenville and DuPage regarding measures to alleviate a perceived inadequacy in the existing culvert. Accordingly, plaintiffs have presented sufficient evidence of notice to DuPage regarding the purported defects in the culvert to meet the requirements of § 3–102(a).

c. § 2–103

DuPage also invokes § 2–103 of the Act, which provides:

A local public entity is not liable for an injury caused by adopting or failure to adopt an enactment or by failing to enforce any law.

Ill.Rev.Stat., ch. 85, § 2–103 (1981). Du-Page cites this provision out of concern that plaintiffs might argue, based upon evidence indicating that the Warner warehouse was built lower than Bensenville building ordinances required, that DuPage had some responsibility to ensure that Bensenville properly enforced its building codes and ordinances. No such argument has surfaced to date, and in response to DuPage's motion plaintiffs have disavowed any intent to make it. Accordingly, § 2–103 is inapposite.

---

10. DuPage's expert, John Morris, likewise acknowledged that the bends might increase the possibility of debris accumulation, and such ac-cumulation would decrease the flow capacity of the culvert.

## E. *Public Official Immunity*

■ Finally, DuPage invokes the common law doctrine of public official immunity. *See, e.g., Ten Eicken v. Johnson,* 1 Ill.App.3d 165, 273 N.E.2d 633, 636 (1st Dist.1971); *Lusietto v. Kingan,* 107 Ill. App.2d 239, 246 N.E.2d 24, 27 (3d Dist. 1969). DuPage argues that because this doctrine would protect the designers of the 1978 improvements to Thorndale Road from liability arising from these improvements, the County as their employer enjoys comparable immunity. For several reasons, this contention is erroneous.

As a threshold matter, DuPage's invocation of common law immunities is inappropriate. "In Illinois, municipalities and their employees enjoy no immunity from suit, except as provided by the Act." *Melbourne Corp. v. City of Chicago,* 76 Ill. App.3d 595, 394 N.E.2d 1291, 1297, 31 Ill. Dec. 914, 920 (1st Dist.1979). *See also Warchol v. City of Chicago,* 75 Ill.App.3d 289, 393 N.E.2d 725, 729, 30 Ill.Dec. 689, 693 (1st Dist.1979) ("the liability of a municipal corporation is currently governed by the Local Governmental and Governmental Employees Tort Immunity Act"). Moreover, although the provisions of the Act have effectively codified common law immunities, *see id.,* 393 N.E.2d at 729, 30 Ill.Dec. at 693, the express terms of the Act regarding liability cannot be ignored. *Cf. Horton v. City of Ottawa,* 40 Ill.App.3d 544, 352 N.E.2d 23, 25–26 (3d Dist.1976) (rejecting argument premised upon common law public official immunity, where that argument disregarded applicable provisions of the Act).

In any event, public official immunity has no bearing whatsoever upon this case. Sections 2–201, *et seq.* of the Act do codify the doctrine of public official immunity which existed at common law. Ill.Rev. Stat., ch. 85 ¶ 2–201, *et seq.* (1981); *see also*

Ill.Rev.Stat., ch. 85 ¶ 3–103(b) (1981). Yet, as the Court pointed out in its decision denying DuPage's motion for summary judgment, public official immunity is immaterial where, as in this case, no public official has been named as a defendant. *See* Memorandum Opinion and Order dated June 27, 1989 at 6 ("even a cursory reading of Warner's amended complaint reveals that Warner is not seeking to hold any public officials 'personally liable' for their acts in connection with the Thorndale improvements"). Further, although § 2–109 of the Act provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable," Ill.Rev. Stat., ch. 85, ¶ 2–109 (1981), this provision does not operate to relieve DuPage of liability here. The same argument that DuPage attempts to make was explicitly rejected in *Horton:*

> Defendant argues that, under both the statute and case law, the official in charge of city streets is not liable, and therefore the city which employs him is similarly immune from liability under section 2–109, supra....
>
> While we acknowledge the seemliness of defendant's logic, we find that defendant would have us disregard Article III of the tort immunity statute which deals with liability for injury occurring in the use of public property....

352 N.E.2d at 25. Thus, regardless of whatever immunity the public officials and employees of DuPage might enjoy for their work in connection with the Thorndale Road improvements, DuPage itself can be subjected to liability consistent with the terms of such provisions as §§ 3–102 and 3–103, discussed above. *See id.* 352 N.E.2d at 25–26 (holding municipality liable for failure to maintain roadway in reasonably safe condition).[11]

---

**11.** Certain of the authorities cited in this section of DuPage's brief deal with the separate question of whether the governmental entity sued owed a particular duty to the plaintiff. For example, DuPage relies upon language from *First National Bank of Lake Forest v. Village of Mundelein,* 166 Ill.App.3d 83, 519 N.E.2d 476, 482, 116 Ill.Dec. 584, 590 (2d Dist.1988) indicat-

ing that the maintenance of roads is a governmental function and there can be no cause of action premised upon the failure to perform this function. To the same effect, DuPage cites *Bainter v. Chalmers Township, McDonough County,* 198 Ill.App.3d 540, 555 N.E.2d 1195, 1196, 144 Ill.Dec. 676, 677 (3d Dist.1990) (no duty to widen roads, smooth gravel, erect signs,

## III. CONCLUSION

For the foregoing reasons, defendant's motion for a directed verdict is denied.

or mow weeds); *Havens v. Harris Township,* 175 Ill.App.3d 768, 530 N.E.2d 284, 285, 125 Ill.Dec. 256, 257 (3d Dist.1988) (same). Of course, whether the municipality owed a duty is a question separate from whether a governmental entity enjoys immunity from liability in negligence. *See Kirchgessner v. Tazewell County,* 162 Ill.App.3d 510, 516 N.E.2d 379, 381–82, 114 Ill. Dec. 224, 226–27 (3d Dist.1987). To the extent DuPage means to argue that it cannot be held liable for failing to take actions which would have prevented the flooding of plaintiffs' property because it owed plaintiffs no duty to undertake such preventative measures, that argument also fails. Although, as DuPage has previously argued, Illinois law does not hold local governments to a duty to undertake public improvements, *see, e.g., Havens,* 530 N.E.2d at 285, 125 Ill.Dec. at 257, such entities are obligated to ensure that the public improvements they choose to undertake are reasonably safe. *See* Ill.Rev.Stat. § 3–103(a) (local public entity is liable for execution of plan or design resulting in condition which is not reasonably safe). *See also Horrell v. City of Chicago,* 145 Ill.App.3d 428, 495 N.E.2d 1259, 1262, 99 Ill.Dec. 524, 527 (1st Dist.1986). The thrust of plaintiffs' claim in this case, as well as the evidence presented in support of that claim, is not that DuPage was negligent in failing to undertake public improvements which would have improved drainage in the area of the Warner warehouse and preventing the flooding; rather, it is that DuPage was negligent in the design and implementation of the Thorndale Road improvements which it had elected to undertake, causing interference with the existing drainage in such a way as to cause the flooding of the Warner property. *Cf. Starcevich v. City of Farmington,* 110 Ill. App.3d 1074, 443 N.E.2d 737, 741, 66 Ill.Dec. 811, 815 (3d Dist.1982) (statutory immunities did not bar plaintiff's claim that changes which municipality made to adjoining land and to culvert unreasonably interfered with drainage and diverted water onto plaintiff's property).