ROBIN MASLANKA, Plaintiff-Appellant, v. RUSSELL BLANCHETT, JR., Defendant-Appellee.

Third District   No. 3—92—0201

Opinion filed December 23, 1992.

Michael M. Grujanac, of Carl Graf, Jr. & Associates, of Morton Grove (Carl N. Graf, Jr., of counsel), for appellant.

Cory D. Lund, of Hinshaw & Culbertson, of Joliet, and Hinshaw & Culbertson, of Chicago (Bruce L. Carmen, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, Robin Maslanka, appeals the trial court's refusal to enter judgment *n.o.v.* or order a new trial following a jury verdict in favor of defendant, Russell Blanchett, Jr. Plaintiff also contends the trial court abused its discretion in denying her motion for a continuance during trial. We find no error in the trial court's decisions. Accordingly, we affirm.

Plaintiff brought a negligence action against the defendant for personal injuries she received in a boating accident on the Illinois River near Morris. Plaintiff was a passenger in the open bow of an 18-foot motorboat operated by the defendant. Plaintiff alleged the defendant operated the motorboat in a negligent manner which caused her to hit her face against a side handrail after being thrown across the boat.

The record shows the defendant's parents and the Grogan and Tunnel families leased adjoining undeveloped waterfront lots on the Illinois River. All three families operated motorboats. Defendant and his family spent nearly every summer weekend on the river. Defendant had been operating his family's motorboat, alone or under his father's supervision, for 10 years.

Plaintiff had been a weekend guest of the Grogan family the previous summer and the summer of the accident. She had been a passenger in boats on the Illinois River both summers and had ridden with the defendant on other occasions.

The accident occurred on June 14, 1987. Plaintiff and two women were seated in the open bow of the boat. The defendant and another passenger were seated amidship, with two passengers located in the stern. The bow of the boat, located in front of the defendant/operator, contained a small footwell in the middle. The perimeter of the bow area contained padded bench seats, which came together at the point of the bow. Two women sat on the side bench seats, while the plaintiff was located somewhere in the middle.

The testimony at trial was in conflict concerning exactly where and how the plaintiff was sitting. The plaintiff testified that she sat left of the point of the bow, at the end of Michelle Tunnel's outstretched legs. Tunnel recalled the plaintiff sitting to the right of the point of the bow with her feet tucked under her behind. Pam Mysliwiec, the other forward passenger, recalled plaintiff sitting at the point of the bow, with her left knee on the cushion, her right foot in the footwell, and both hands on the railing. Defendant testified that the plaintiff sat directly at the point of the bow, between the other women's outstretched legs, with her knees on the cushion and her hands on the rail.

Traffic on the Illinois River that Sunday was especially heavy. The water was choppy from the wakes of the numerous boats. The wakes were estimated to be one to two feet high. Plaintiff testified the defendant drove at a speed of 25 to 30 miles per hour. The defendant and others placed the boat's speed closer to 25 miles per hour. The motorboat was capable of traveling 58 miles per hour.

Plaintiff testified the defendant was alternately accelerating and decelerating and swinging the steering wheel from side to side. Plaintiff alleged the defendant's actions caused the motorboat to bounce on the waves. Plaintiff stated the defendant looked and laughed at her when she urged him to "cut it out." Plaintiff responded by changing the way she was sitting in order to make herself more stable. She then put her left knee on the seat and grabbed the railing with both hands.

Plaintiff testified that while the defendant was turning the boat 180 degrees, he steered the boat into a wake, causing the boat to become airborne. Plaintiff testified she lost her grip on the railing and was thrown across the nose of the boat. Plaintiff hit her mouth on the opposite railing. Teeth marks found on the railing were 11 to 12 inches to the right of the point of the bow.

Defendant testified that after coming out of the turn, he saw a two-foot wake. Defendant stated he then cut across the wake to lessen its impact. The bow raised up as the boat hit the wake. Defend-

ant admitted he did not slow before turning. However, the defendant testified that the boat naturally slows as a result of turning. Defendant denied turning the boat from side to side as he made the turn. He also denied ever hearing the plaintiff urge him to stop.

Michelle Tunnel and Pam Mysliwiec testified the defendant did nothing to cause the boat to rock unusually or bounce. Mysliwiec also testified she told the plaintiff three times to sit differently because she felt the plaintiff was sitting improperly. Neither witness could recall the plaintiff ever being thrown from her seat.

Jeff Grogan met the boat when it returned to shore. Plaintiff and Grogan both testified the plaintiff stated the defendant "was driving like an idiot." Grogan said Michelle Tunnel told him she had "never been so scared as this boat ride." Tunnel denied making the statement. Grogan also testified the defendant apologized for "horsing around" and asked Grogan not to tell his parents because his father would revoke his boating privileges. The defendant denied having this conversation with Grogan.

Following a jury trial, the trial court entered judgment on a verdict for defendant. Plaintiff's motions for judgment *n.o.v.* and a new trial were denied.

On appeal, the plaintiff contends the trial court should have granted her motion for a new trial because the jury verdict was against the manifest weight of the evidence. We disagree. Alternatively, the plaintiff requests entry of a judgment notwithstanding the verdict. She contends the evidence so overwhelmingly favored the plaintiff that no contrary verdict could stand. Following our review of the evidence, we disagree and affirm the trial court.

On a motion for a new trial a court will weigh the evidence and order a new trial if the verdict is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36.) A verdict is against the manifest weight of the evidence when the opposite conclusion is clearly evident or when the findings are unreasonable, arbitrary and not based on the evidence. *Kure v. Sluski* (1989), 186 Ill. App. 3d 472, 474, 542 N.E.2d 1152, 1154.

A judgment notwithstanding the verdict should be granted if all the evidence, viewed in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict could stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

Plaintiff argues that the defendant was negligent in maintaining a speed greater than what was reasonable and proper in light of

the heavy boat traffic and the one- to two-foot wakes. However, plaintiff presented no evidence, other than her own testimony, that it was improper to operate the boat at that speed under those conditions. Absent evidence that the defendant was operating his boat in an unsafe manner, we cannot say the jury's verdict was arbitrary, unreasonable or not based upon the evidence presented at trial.

■ Plaintiff also argues that the defendant's statements to Jeff Grogan were admissions of negligence. Grogan testified the defendant admitted he was "horsing around." Grogan stated the defendant asked him not to tell his father about the accident so the defendant would not lose his boating privileges. We disagree with plaintiff's contention that these statements are admissions. First, our review of the record shows the defendant denied ever having this conversation with Grogan. Second, Grogan's testimony was impeached five times, including his recollection of the plaintiff's characterization of defendant's driving. We believe the jury more than likely considered Grogan's impeachment when it weighed his credibility as a witness.

The credibility of witnesses and the weight to be given testimony are typically matters for a jury to consider. (*Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 436, 167 N.E.2d 212, 216.) The evidence presented was clearly conflicting as to whether defendant's driving was careless, unsafe or negligent. Our review of the record indicates the jury's verdict in favor of the defendant is supported by the evidence. We find the proximate cause of the plaintiff's injury was her own conduct in how she positioned herself in the boat. After reviewing the evidence in its aspect most favorable to the defendant, we cannot conclude that it so overwhelmingly favors the plaintiff that no contrary verdict could stand. Also, under the lesser standard of granting a motion for a new trial, we conclude that the verdict was not against the manifest weight of the evidence.

Plaintiff finally contends the trial court abused its discretion in denying her motion for a continuance. Plaintiff sought a continuance on the third day of trial in order to obtain the testimony of Judy Soria, a claims representative employed by defendant's liability insurer. During a recess in the trial, the defendant's attorney told plaintiff's counsel that Mysliwiec's trial testimony would most likely differ from the transcribed statement Mysliwiec gave to Soria. As a result, the plaintiff determined that she would need Soria's testimony in order to impeach Mysliwiec. The trial court refused the plaintiff's request for a continuance so she could subpoena Soria.

The defendant responds by noting that the plaintiff should have anticipated the need for Soria's sworn testimony. Mysliwiec's unau-

thenticated and unsworn statement clearly could not be used to impeach Mysliwiec's courtroom testimony. Without a waiver of foundation by the defendant or the production of deposition testimony from Soria, the plaintiff would be unable to impeach Mysliwiec's courtroom testimony to the extent that it might be inconsistent with Mysliwiec's unsworn and unauthenticated statement. Defendant argues that the plaintiff should have interviewed or deposed Mysliwiec in advance of trial to prevent the quandary she found herself in on the third day of the trial. We agree.

Good cause must be offered before a motion to continue during trial will be granted:

> "Because of the potential inconvenience to the parties, the witnesses and the court, especially grave reasons for granting a delay must be given once a case has reached the trial stage." (*Schneider v. Seibutis* (1972), 3 Ill. App. 3d 323, 326, 279 N.E.2d 37, 39.)

Supreme Court Rule 231(f) requires that a sufficient excuse must be shown in order to grant a continuance once the cause has been reached for trial. (134 Ill. 2d R. 231(f).) Similarly, section 2—1007 of the Civil Practice Law requires a showing of good cause to obtain a continuance, although a grant of a continuance under that section is at the discretion of the court. Ill. Rev. Stat. 1989, ch. 110, par. 2—1007.

■ The granting or denying of a motion for continuance will not be disturbed on appeal unless there has been a manifest abuse of discretion or a palpable injustice. (*Thomas v. Thomas* (1974), 23 Ill. App. 3d 936, 940, 321 N.E.2d 159, 163.) We find the plaintiff did not establish sufficient cause to warrant a continuance in the middle of trial. From the initial filing of the case in June 1989 to the trial in September 1991, plaintiff clearly had sufficient time to obtain any necessary statements. We further note the plaintiff neither deposed nor interviewed Mysliwiec prior to trial, even though she was an obvious occurrence witness. Therefore, we conclude the trial court did not abuse its discretion in denying plaintiff's motion for continuance.

For the reasons indicated, the judgment of the circuit court of Grundy County is affirmed.

Affirmed.

BARRY, P.J., and SLATER, J., concur.